## JIM SLACK v. THE STATE.

### No. 1841.   Decided June 26, 1912.

**1.—Murder—Charge of Court—Preventing Theft.**

Where, upon trial of murder, there was evidence that deceased was shot by defendant while the former was in the act of stealing corn from defendant, inside of defendant's inclosure, and the evidence also circumstantially showed that deceased was trespassing on appellant's premises at night looking for watermelons, a charge of the court that defendant could not justify the killing if he shot deceased while the latter was not within reach of a shotgun from the place where the alleged theft had been committed was error, under article 674, Penal Code.

**2.—Same—Rule Stated—Trespass.**

If deceased was merely trespassing on the premises of defendant, and at the time he was shot he was not engaged in committing any theft, and his acts and conduct were not such at the time as to make it reasonably appear to defendant that deceased was there for the purpose of committing a theft, etc., the killing would be unjustifiable.

**3.—Same—Theft at Night.**

If deceased was stealing corn in the night-time and was leaving the premises of defendant with the corn in his possession, defendant was justified in shooting him. Following Whitten v. State, 29 Texas Crim. App., 504.

**4.—Same—Jury and Jury Law—Opinion of Juror.**

Where it was made to appear on appeal that two of the jurors who tried defendant had formed and expressed an opinion, prior to the time they were accepted and served on the jury, a new trial should have been granted.

Appeal from the District Court of Mills.   Tried below before the Hon. Jno. W. Goodwin.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. C. Darroch,* for appellant.—On the question of justification in killing deceased in the commission of theft at nighttime:   Laws v. State, 26 Texas Crim. App., 643; Grant v. Hass, 31 Texas Civ. App., 688; Whitcomb v. State, 21 S. W. Rep., 976; Whitten v. State, 29 Texas Crim. App., 504; 30 Cyc., 1633; 6 Words and Phrases, p. 1583;

article 674, 675, 874 Wilson Penal Code; East Tenn. V. & G. Ry. Co. v. Carloss, 77 Ala., 443; Law v. Town of Fairfield, 46 Vt., 425.

On question of misconduct of jury: Graham v. State, 28 Texas Crim. App., 582; Long v. State, 10 id., 186; Randle v. State, 34 Texas Crim. Rep., 43; Shannon v. State, id., 5.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary.

The record discloses that appellant and deceased had never met until the night of the homicide. Appellant was at his home when deceased drove up in a wagon; his wife, and John O'Bannon and wife were also in the wagon, although appellant did not see them. Deceased asked the way to Miller's and appellant instructed them as to the way, and they drove on. Appellant retired, going to sleep on his gallery. Later in the night the rattle of a wagon awoke him, and some one having been depredating around his premises, he listened, and near his barn the rattle of the wagon ceased. This aroused his suspicion, and he got up and went to the barn. Down the road he could see the wagon standing still, and heard some one breaking corn in his field, as he testifies. He returned to the house, dressed in part, got his gun, and returned to his field, saying he could still hear the gathering of corn. He got in a position near some trees where he could not be seen and watched and listened. In a few moments a man came out of his corn field with a sack of corn on his shoulder, and something in his right hand. Appellant says, thinking he had been discovered, and that he, the man, had a pistol in his right hand, he fired, the shot killing deceased.

The State's witnesses, Mrs. Speed, John O'Bannon and wife, admit they came back down the road and stopped the wagon, and deceased got out and went into the field of appellant, saying he was going to see if he could not find a watermelon in the cotton. O'Bannon says deceased not returning, he got out and went into the field in search of him. Appellant says O'Bannon was also pulling corn, but as he threw up his hands when commanded he did not shoot him. The State evidently relied on proving that deceased was not in fact stealing corn, and that the two sacks of corn had been placed where found by appellant after the homicide, although no positive testimony was offered on that point. The State's witnesses all say they did not know where deceased was when shot, while appellant claims he was coming right from his corn patch with a sack of corn. Two sacks of corn were found in the field next day. It is unquestioned that deceased was killed inside of the enclosure of appellant, about a sixty acre field in which corn and cotton were planted. The court instructed the jury:

"If you believe that the defendant shot and killed Ed Speed, the deceased, for the purpose of preventing theft of his corn in the night-time by the deceased, but believe that the place at which defendant shot Ed Speed was not the place where the theft was committed or within reach of shotgun from such place, then defendant can not justify the killing on the ground that it was for the purpose of preventing such theft."

As an abstract proposition of law this is correct, but we, like appellant, fail to see its application to the state of facts proven in this case. If deceased stole any corn he was killed inside of appellant's enclosure as he came from the corn field on his way to his wagon with the corn, and this being the undisputed proof of appellant, the proposition of law had no application. The proof for the State, circumstantially, might raise an issue that deceased had stolen no corn, but was trespassing on appellant's premises at night looking for watermelons, and this would not call for the above charge, and it was error to give it under the evidence in this case.

In the case of Grant v. Hass, 31 Texas Civ. App., 688, our Court of Civil Appeals, in construing this article of our Penal Code, says:

"Article 674, Penal Code, which justifies homicide in defense of property, in so far as it refers to the crime of theft is as follows: 'Homicide is permitted in the necessary defense of person or property under the circumstances and subject to the rules here set forth.' Article 675 provides that homicide for theft at night is justifiable, when committed under the following circumstances: 'First. It must reasonably appear by acts, or by words coupled with the acts of the person killed, that it was the purpose and intent of such person to commit one of the offenses above named,' which includes theft at night. Second. The killing must take place while the person killed was in the act of committing the offense, or after some act done by him showing evidently an intent to commit such offense. Third. It must take place before the offense committed by the party killed is actually completed. Eighth. In case of burglary and theft by night, the homicide is justifiable at any time while the offender is in the building, or at the place where the theft is committed, or is within reach of gunshot from such place or building.'

"If the plaintiff had entered the premises at night, with the purpose and intention of stealing the melons, and his conduct had been of such a character as to make it reasonably appear that such was his purpose, his death by killing would have been justifiable. The killing must take place while the offender is in the act of committing the offense, or after some act done by him showing an intention to commit the offense; or if the theft is completed, the killing must occur within gunshot distance of the place where the theft was committed.

"We are also of the opinion that, in a proper case, the rule of law just stated will justify the homicide of one who in the night-time unlawfully invades or trespasses upon the premises of another, with no

purpose or intention to steal, but whose conduct is of such a character as to make it reasonably appear to one exercising proper care and caution that such was his intention. The apprehension upon the part of the slayer must be reasonable, not merely conjectural, such as might arise from the mere presence of the intruder, but must be predicated upon some act upon the part of the deceased of a nature calculated to arouse in the mind of one of ordinary prudence and caution that a theft is about to be committed."

This is in accordance with the decision of this court in the case of Whitten v. State, 29 Texas Crim. App., 504, and in these opinions the rules of law applicable are so fully discussed we merely refer to them. If deceased was merely trespassing on the premises of appellant, and at the time he was shot he was not engaged in committing a theft, and his acts and conduct were not such at the time as to make it reasonably appear to appellant that he was there for the purpose of committing theft, the killing would be unjustifiable. But, if, in fact, deceased was stealing corn in the night-time, and was leaving the premises with the corn in his possession, appellant was justifiable in shooting him. This may seem to be a harsh rule of law, but the character of persons generally who commit theft in the night-time experience has shown will take life before suffering detection and arrest, and the Legislature has for this reason broadened the common law rule, and we have no right to restrict it.

Again, by the affidavits of Montgomery and Woody it is made to appear that jurors Jim Brim and Sam Ward had formed and expressed an opinion prior to the time they were accepted and served on the jury, Brim having stated, he "believed appellant was guilty and if he was on the jury he would convict him," while Ward is alleged to have said, "that appellant had no right to kill deceased and ought to be convicted." No contest of these affidavits are filed, and the record comes to us with these facts testified to and not denied. Every person is entitled to a trial by a fair and impartial jury, and by jurors who have not prejudged his cause, and if these jurors went into the jury box with fixed views as stated by those witnesses, they were improper jurors.

We do not deem it necessary to discuss the other questions raised as on account of the above errors the case must be reversed and remanded.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*