## Francisco Espalin v. The State.

No. 6420. Decided November 23, 1921.

Rehearing denied January 25, 1922.

**1.—Accomplice—Murder—Justifiable Homicide—Statutes Construed—Theft.**

Where, upon trial of murder as an accomplice, the facts showed that the deceased was shot and killed as he got over a fence into a melon patch of defendant, the contention that defendant and his principal were justifiable in the killing, under Article 1105, P. C., which provides that homicide is justifiable when the person killed is committing a theft, is untenable, because said Article was changed by Article 1234, P. C., which specifically declares that if any person shall take or carry away from the farm, orchard, etc., and fruit, melons, etc., he shall be guilty of a misdemeanor.

**2.—Same—Rule Stated—Legislative Intent—Classification of Offenses.**

When the Legislature selects certain acts, though theretofore, or otherwise made penal under an existing statute, and by specific designations makes such acts punishable by a different penalty from that theretofore applicable, and essentially changes the ingredients of the new offense, such specified acts are removed from the list, or classification of crimes to which they formerly belonged, and must thereafter be in that class in which they are placed by such new Act. Following Busey v. State, 87 Texas Crim. Rep., 23.

**3.—Same—Statute Construed—Legislative Intent—Theft—Classification.**

The language of Article 1234, supra, omits the well-recognized elements of theft, and would seem to plainly indicate that the Legislature intended to remove the act therein named from the domain or classification of theft.

**4.—Same—Statutes Construed—Justifiable Homicide—Taking Melons From Field.**

The conclusion of this court is that one who kills another while the latter is engaged in an act comprehended by the terms of Article 1234, supra, could not as a matter of law claim such act to be justifiable homicide; but this in no wise affects one's rights to act in the defense of property, as given under Article 1107, P. C. Distinguishing Grant v. Haas, 75 S. W. Rep., 345; Slack v. State, 67 Texas Crim. Rep., 460; and Davis v. State, 81 Texas Crim. Rep. 450.

**5.—Same—Requested Charge—Segregated Melons—Theft.**

Where, upon trial of murder, the evidence did not show that the deceased and his companions knew there were any melons in the patch pulled or

90 T. C.—40

piled up in the field, there was no error in refusing the requested charge that if deceased entered the premises in question on the night of the homicide to steal melons already severed from the vines, etc., to acquit the defendant.

### 6.—Same—Requested Charge—Accidental Shooting not Raised.

Where there was no testimony tending to raisé the issue that the principal of the defendant shot at the companion of the deceased, and that such shots accidentally killed the deceased, there was no error in the court's failure to submit a requested charge on this phase of the case.

### 7.—Same—Principal—Accomplice—Indictment—Practice in Trial Court.

Where the indictment contained two counts, one charging appellant as principal in the murder, and the other charging him as an accomplice, and both counts being submitted to the jury when the case was closed, there was no error in overruling defendant's motion for an instructed verdict as to the first count, inasmuch as the verdict found defendant "not guilty" under such count.

### 8.—Same—Peremptory Charge—Principal and Accomplice.

Upon trial of murder there was no error in refusing defendant's motion for an instructed verdict for acquittal, as the evidence raised the issue that defendant was an accomplice to the person who killed the deceased.

### 9.—Same—Confessions—Principal—Evidence—Practice in Trial Court— Charge of Court.

The weight of authority seems in favor of admitting the confessions of the principal where an accomplice is on trial, it being necessary to show the guilt of the principal, and all evidence is admissible whose legitimate tendency is to show such guilt. Following Simons v. State, 10 Texas Crim. App., 131, and other cases, and such confessions are not limited to a narration of the bare facts but includes such statements as to show malice, deliberation, etc., and where the court properly limited the charge to the guilt of the principal, there was no reversible error.

### 10.—Same—Confessions—Principal—Bill of Exceptions.

Where the bill of exceptions did not point out any part of the confession of the principal and make specific objections thereto, but the objection was as to the whole for the reason stated, there was no reversible error.

### 11.—Same—Evidence—Volunteered Statement—Harmless Error.

Where, upon trial of murder, a statement made by the wife of the principal of the defendant on cross-examination not in response to any question, and which was a mere volunteered statement, but the same could not under the facts of the instant case have injured the defendant, there was no reversible error.

### 12.—Same—Argument of Counsel—Bill of Exceptions—Practice on Appeal.

Wherein defendant's bill of exceptions there appeared nine quotations from the district attorney's speech to the jury, many of which were permissible, and no setting or connection was given in said bill of exceptions as to any of said quotations, there was no reversible error.

### 13.—Same—Sufficiency of the Evidence—Principal—Accomplice.

Where the defendant was indicted as an accomplice, and the testimony of his principal clearly showed his guilt, and this testimony was substantially corroborated, the conviction of murder as an accomplice is sustained.

**14.—Same—Statutes Construed—Other Courts—Definition of Offense.**

Where appellant insisted in his motion for rehearing that this court did not correctly interpret the case of Grant v. Haas, *supra,* and others, and that the same is authority for the contention of appellant that taking melons at night is theft, this court, while it cannot go further than to say that the issue presented in said civil case does not apply to the facts in the instant case, must adhere upon its own construction of Article 1234, P. C., which makes it a misdemeanor to take melons at night, etc., from an orchard, etc. And the same reasoning applies to Sparks v. State, 76 Texas Crim. Rep., 263.

**15.—Same—Rule Stated—Statutes Construed—Taking Melons—Misdemeanor.**

If two legislative acts are positively repugnant, so that they cannot be reconciled and made to stand together by any fair and reasonable construction, then the one last passed will control and repeal the earlier law, and the latter enactment of Article 790, P. C., now Article 1234, P. C., provides that the taking of melons, fruits, vegetables, etc., from the farm, orchard, etc., shall be a misdemeanor punishable only by fine.

**16.—Same—Statutes Construed—Other Jurisdiction—Amendment.**

This court cannot assent to appellant's proposition that after the act of 1913—which was the latter law under discussion in the Sparke case, *supra,* was amended by Acts Regular Session, 1915 (which amendment merely eliminated from said law the words 'steal') that said law became and now stands on a parity with and is similar to, in effect, to Article 1234, supra.

**17.—Same—Volunteered Statement—Cross-examination—Rehearing.**

Where appellant again in his motion for rehearing urged that this court was in error in holding that no injury resulted from a statement volunteered by the wife of the principal of defendant, etc., this court must after due consideration adhere to the ruling that no injury was shown to the defendant.

**18.—Same—Argument of Counsel—Practice on Appeal.**

The statement by the prosecuting attorney in which he referred to the appellant as "this killer," were of such inflammatory character as to call for a reversal, is untenable, under the facts in the instant case.

Appeal from the District Court of El Paso. Tried below before the Honorable W. D. Howe.

Appeal from a conviction as an accomplice for murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Winter, Goldstein, Miller, McBroom & Scott,* and *Jackson, Isaccks & Fryer,* for appellant.—Cited cases in opinion.

*R. G. Storey,* Assistant Attorney General, and *Chas. Owen,* and *C. L. Vowell,* for the State.—Cited cases in opinion.

LATTIMORE, JUDGE.—Appellant was convicted in the Thirty-fourth District Court of El Paso County, of being an accomplice to the crime of murder, and his punishment assessed at fifteen years in the penitentiary.

Appellant owned land in the Rio Grande valley below the city of El Paso. On said land he had patches of watermelons enclosed by wire

fences. Prior to the date of this homicide he had employed various parties, among them one Luis Garcia, to guard said melon patches against depredations. On the night of the homicide four young men came from El Paso down a road adjacent to the melon patch guarded by Garcia. Two of said parties, deceased Grady Weeks and one Caples, alighted from the automobile in which the four were riding, got over a fence and into a melon patch of appellant. Garcia, from a position across the road and in another enclosure, fired a rifle, shooting Grady Weeks in the head·and killing him. Garcia was indicted and convicted as a principal and appellant was convicted as an accomplice to the murder of Young Weeks. Other facts necessary to elucidate our opinion will be stated in discussing the various questions raised.

Appellant claimed that deceased and Caples, his companion, had gone into the melon patch in question in the night-time for the purpose of committing theft, and that this being true, the act of Garcia in killing Weeks was justifiable homicide under the provisions of Article 1105, Vernon's P. C., which makes justifiable a homicide inflicted for the purpose of preventing theft at night. The State contends that taking melons from the patch is not theft under our statute. In the early Penal Code of Texas it was made theft for one to steal or feloniously take any growing, standing or ungathered corn . . . or other agricultural product. Our Legislature enacted Article 1105, *supra*, in 1871. Three years later, what' is now Article 1234, Vernon's P. C., was enacted specifically declaring that if any person shall take or carry away from the farm, orchard, garden or vineyard of another, without his consent, any fruit, melons or garden vegetables, he shall be fined in any sum not exceeding one hundred dollars. By the Revised Statutes of 1879 this Act was classified as malicious mischief, and has been so classified in succeeding revisions or codifications of our statutes since. When the Legislature selects certain acts, though theretofore or otherwise made penal under an existing statute, and by specific designation makes such acts punishable by a different penalty from that theretofore applicable and essentially changes the ingredients of the new offense, such specified acts are removed from the list or classification of crimes to which they formerly belonged and must thereafter be in that class in which they are placed by such new Act. This is illustrated by the well known rule applicable to laws making theft of certain designated property punishable by different penalties from that applicable to theft in general, such as theft of hogs, cattle, horses, etc. It would clearly no longer be proper to prosecute or to punish one charged with violating such law, under the general theft statute.

While the question here presented was not raised by the accused on appeal in Busey v. State, 87 Texas Crim. Rep., 23, still it appeared to us so clear that one charged with taking ten bushels of pears from an orchard could not be prosecuted under an ordinary indictment for

theft, but must be prosecuted under the provis·=ns of Article 1234 for malicious mischief, that in reversing said case upon another error, we felt it our duty to call attention of the trial court to the provisions of said last named article, and to the fact that the prosecution should be brought thereunder.

With the legislative purpose in the enactment of a given law, we are not concerned save we be called upon to construe some part or the whole of such law by reason of some ambiguity therein or lack of clarity of expression. The language of Article 1234, *supra,* omits the well recognized elements of theft, and would seem to plainly indicate that the Legislature intended to remove the acts therein named from the domain or classification of theft. While this appears to be the plain indication, it may not be amiss, in view of the language of Mr. Black in his work on Interpretation of Laws, p. 107, where.the learned author says: "It must always be supposed that the legislative body designs to favor and foster rather than to contravene, that public policy which is based upon the principles of natural justice, good morals and the settled wisdom of the law as applied in the ordinary affairs of life," and in view of the sequence in point of time in the enactments, to conclude that our lawmakers did not intend that that class of offenders most frequently composed of ignorant, youthful and thoughtless persons, who ordinarily take fruit, melons and vegetables from our orchards, farms and gardens, could be ruthlessly shot down when so engaged and those who killed them claim themselves justifiable as persons who had taken human life in preventing theft at night. We think it correct to further state that as far as our information goes, no other State save Texas justifies homicide when committed to prevent theft at night, except such theft be a felony.

Our conclusion is that one who kills another while the latter is engaged in an act comprehended by the terms of Article 1234, *supra,* could not as a matter of law claim such act to be justifiable homicide, but this in nowise affects one's right to act in defense of property as given under Article 1107, Vernon's P. C. This disposes of many of appellant's contentions as set out in his various assignments of error in his brief and contained in several bills of exceptions.

The cases of Grant v. Haas, 75 S. W. Rep., 345; Slack v. State, 67 Texas Crim. Rep., 460, and Davis v. State, 81 Texas Crim. Rep., 450, 196 S. W. Rep., 521, are cited by appellant in support of these assignments of error, and this contention made by him that Garcia was justifiable in taking the life of young Weeks.

The expressions of the courts in their opinions must be read in the light of the issues and facts in the case under discussion in such opinion. Whether the taking of melons was malicious mischief or theft, was in no way an issue discussed in Grant v. Haas, *supra.* The case was one of damages sought by a party injured by a spring gun set in the melon patch by its owner. In Slack v. State, *supra,* the defense relied for justification of a homicide, on the fact that deceased

was in the act of stealing corn from a field of the accused. The State witnesses swore that deceased left the wagon in which they were and entered the field to look for a watermelon. While there is no discussion of the question involved in the instant case, as to whether taking melons from a field is theft or malicious mischief, we do find this expression in the opinion in the Slack case:

"If deceased was merely trespassing on the premises of appellant, and at the time he was shot he was not engaged in committing a theft, and his acts and conduct were not such at the time as to make it reasonably appear to appellant that he was there for the purpose of committing a theft, the killing would be unjustifiable. But, if, in fact, deceased was stealing corn in the night-time, and was leaving the premises with the corn in his possession, appellant was justifiable in shooting him."

We take this to be in accord with our views here expressed. In Davis v. State, *supra*, a wagon load of melons had been taken and secreted apparently at some distance from the patch where they grew. The owner found them and went with others on the night following, to apprehend the takers when they should return for the melons. When they did come a difficulty ensued and the owner of the melons was killed. It would appear so plain that the rights of the parties arising from and dependent on their attitude toward a load of melons moved from the patch before the contest arose, could shed no light upon the question under discussion, that we forego any further discussion of said authority.

A special charge was requested by appellant to the effect that if deceased entered the premises in question on the night of the homicide to steal melons already severed from the vines, piled up and ready for market, or if his acts and conduct in the premises were such as to make it reasonably appear to Luis Garcia that such was his purpose, and that Garcia shot to prevent the theft of such melons, the appellant should be acquitted. Measuring the applicability of this charge by the facts, it does not appear that deceased or Caples, or any of their party knew there were any melons pulled or piled up in the field. Garcia did not claim on the witness stand or at any time that deceased or Caples were approaching or near any melons severed from the vines, nor did he claim that he shot to prevent the taking of such melons. Appellant testified that there was a pile of melons already severed from the vines located about fifty feet from the spot where Weeks was at the time he was killed. We think such special charge not called for by the facts.

There was no testimony tending to raise the issue that Garcia shot at Caples, the companion of deceased, and that such shot accidentally killed young Weeks. There was hence no need for the submission of this issue as presented in Special Charge No. 12.

The indictment contained two counts, one charging appellant as a principal in the murder, and the other as an accomplice. Both counts

were submitted in the court's charge. When the case was closed on the evidence, appellant presented a motion for an instructed verdict as to the first count, which was refused. We see no injury to appellant possible from the court's refusal of such motion. The authorities cited appear to be those in which by some appropriate effort an election was sought before the accused was called upon to introduce his evidence. The verdict of the jury found appellant not guilty under the first count, and guilty under the second count.

There was no error in refusing appellant's motion for an instructed verdict of acquittal. The killing was with a rifle furnished Garcia by appellant, and if it appeared from the evidence that appellant directed Garcia to kill any man who crossed his fence, this would present a jury question as to appellant being an accomplice in such killing.

The confession of Garcia was admitted in evidence over the objection of appellant. The weight of authority seems in favor of admitting the confession of the principal, where an accomplice is on trial, it being necessary to show the guilt of the principal, and all evidence being admissible whose legitimate tendency is to show such guilt. 16 Corpus Juris, p. 146; Simons v. State, 10 Texas Crim. App., 131; Crook v. State, 27 Texas Crim. App., 239; Hamlin v. State, 39 Texas Crim. Rep., 604; Thomas v. State, 43 Texas Crim. Rep., 23; Gibson v. State, 53 Texas Crim. Rep., 349, 110 S. W. Rep., 41; Sapp v. State, 87 Texas Crim. Rep., 606. Such confessions are not limited to a narration of the bare facts showing the physical act of the infliction of death by the principal, but legitimately include such statements as show the malice, deliberation, preconcert, etc., which fix the character of the offense and affect its punishment. On the trial of the accomplice a confession of the principal can be used for no other purpose than to show and establish the guilt of the principal, and the purpose and effect of such evidence must be carefully guarded in the court's charge. An inspection of the charge in the instant case shows that this was done. From another standpoint the bill of exceptions does not point out any part of the confession and make specific objections thereto, the written statement being objected to as a whole for the reasons stated. We do not think it the duty of the court to sustain a general objection to a document or statement, some part of which is pertinent and admissible. One desiring to avail himself of such objection, must point out that part of a document or instrument which is objectionable and not include the whole.

A statement made by the wife of Garcia not in response to any question, was set out as objectionable in appellant's bill of exceptions No. 10. Said volunteered statement was as follows: "Since my husband was arrested Mr. Espalin went over to see the watchmen down there and told them that if the sheriffs would come over there and ask them about the orders he had given to say that he had given such orders as those Mr. Jose Mosqueda said instead of going and saying what was not the truth we would do—and he went." We have

examined this carefully and conclude that the matter is of no injury. It does not appear what orders of appellant are meant by the language used, and same is susceptible of the construction that he gave to the other watchmen orders similar to those given to Garcia.

One who desires to object to the argument of his opponent's counsel, to the jury, should not do so by selecting a number of separate disconnected paragraphs of such address to the jury and direct a general objection thereat. In appellant's bill of exceptions No. 9 there appears nine quotations from the district attorney's speech to the jury. Many of them are clearly permissible. No setting or connection is given in said bill of exceptions as to any of said quotations, and none of them appear sufficiently objectionable to make them reversible error *per se*.

The testimony of Garcia was given in behalf of the State, and, if true, it amply made out a case against appellant. He swore that in company with several companions he was brought across the Rio Grande river from Old Mexico some time prior to this homicide, and that he was at once employed by appellant, who later placed him at guarding melon patches. That when put to such work appellant raised his wages, gave him a rifle and ammunition and told him to kill any person entering said melon patches; that it made no difference who it was, that if appellant's mother so entered, to shoot her; that witness should keep his gun concealed and walk around the patches, and that if he saw anyone enter, to kill such person. Garcia said that shortly before this killing some soldiers came down and got some melons in the field witness was guarding, and that appellant became very angry with witness and chided him for not killing some of them, and told him that he was a coward, and that if he had killed some of them it would have had a good effect, and that he must kill any person entering said patch; that he would give him additional money for each of such persons that he would kill. Garcia said that appellant promised to protect him from any evil consequences resulting from such killing. In these matters Garcia was substantially corroborated by his wife who claimed to be present and to hear appellant give such instructions. Garcia testified that when young Weeks and Caples climbed over the fence that he shot because he was told so to do by appellant. No word was spoken to either of the young men, and no effort was made to prevent any removal or threatened removal of, or attack by either of them on property in the melon patch. Garcia has been adjudged guilty of murder and his case affirmed by this court, and the evidence appearing amply sufficient to corroborate his implication of appellant in the crime, and no reversible error appearing in the trial of the case, the judgment of the lower court will be affirmed.

*Affirmed.*

ON REHEARING.

## January 25, 1922.

LATTIMORE, JUDGE.—Appellant strongly urges error in our conclusion that the taking of melons from the patch, is not theft under the present law, and that the killing of a person who was in the act of taking such melons from the patch, was not justifiable homicide under Article 1105, Vernon's P. C. It is also insisted that the case of Grant v. Haas, 75 S. W. Rep., 345, was not correctly interpreted by us, and that same is authority for the contention of appellant that taking melons at night is theft. We have again examined said authority carefully. The statement therein that Article 790 of the Penal Code of 1895 makes the theft of melons a misdemeanor, is wholly erroneous, and the sequent reasoning of the learned court, based on such erroneous conclusion, must fall with the false premise. Article 790, Penal Code, 1895, makes the taking of melons a misdemeanor, but not theft. What we have just said about the case of Grant v. Haas, and other cases cited by appellant, led us in the opinion herein to say that the question of whether taking melons was malicious mischief or theft, was not raised or discussed in said case, or the others cited, and that the expressions of the courts in any opinion must be construed in the light of the facts and issues in the individaul case then under consideration. We further observe that we have no authority to overrule a decision of the civil courts, however much we might differentiate or decline to follow any opinion therein rendered. We can go no further than to say that the issue now made in the instant case, as to whether the taking of melons from a patch is theft or malicious mischief, was not before the courts rendering the opinions under discussion, and that we decline to be bound by the announcement of said courts if based on a mistaken view as to the character of offense made by said Article 790, which is present Article 1234, Vernon's P. C.

We also regret that we cannot agree with distinguished counsel for appellant in their interpretation of Sparks v. State, 76 Texas Crim. Rep., 263, 174 S. W. Rep., 351. In that case Sparks was convicted of felony theft, the property taken being an automobile of the value of $1,000, and the prosecution being under the general statute making it felony to fraudulently take property of the value of more than $50. The sole question on appeal in said case was whether by a later Act of the legislature, making the theft of an automobile of the value of $35 and over a misdemeanor, the general law of theft· was in effect repealed as to such automobiles so that the prosecution for felony therein must fall, and a conviction therefor be reversed. The court so held in said case. This is the same principle here announced by us. Mr. Black, in his Interpretation of Laws, Chapter 4, Sec. 53, says that if two legislative Acts are positively repugnant so that they cannot be reconciled and made to stand together by any

fair and reasonable construction, then the one last passed will control and will repeal the earlier law. As we understand it, it makes no difference whether the later law be more or less specific or general, the effect of utter repugnance in the two being the same in either case. In the Sparks case, *supra,* the prior law forbade the taking of any and all property over $50 in value, under pain of felony penalties. The later enactment under discussion took from the general list of such property, automobiles, and decreed as to them, if of value of more than $35, that such taaking should only be a misdemeanor, and this court held that the later law must prevail and be that under which the accused should have been tried. In the instant case the prior law made the fraudulent taking of melons, with intent to appropriate same and to deprive the owner of the value, theft, punishable by imprisonment and fine, or by penitentiary confinement as the value might appear. The later enactment, being Article 790, *supra,* decreed that the taking of melons, fruits, vegetables, etc., from the farm, orchard, garden or vineyard of the owner without his consent, should be a misdemeanor punishable only by a fine not exceeding $100. The taking referred to in the later Act, was without qualification and necessarily included all taking when from the orchard, vineyard, field or patch. This manifest inclusion of all taking under the terms of the later Act, must be held to evidence the legislative purpose to make the taking of melons, etc., punishable only as there prescribed, and as to the articles therein named, to repeal the prior theft law.

Nor can we assent to appellant's proposition that after the Act of 1913,—which was the later law under discussion in the Sparks case, *supra,*—was amended by Chapter 105, Acts Regular Session, 1915 (which amendment merely eliminated from said law the word "steal"), that said law became and now stands on a parity with and is similar in effect to Article 1234, *supra.* Said law as amended by legislative Act of 1915, is now Article 1259a, Vernon's P. C., and was held by this court in Hunt v. State, 89 Texas Crim. Rep., 89, to refer only to one who, without the consent of the owner of a car, takes same and drives or operates it on or in, one of the public places named therein. The character of taking contemplated by said article, is not permanent but temporary, and we do not think same was intended to supersede or repeal, as applicable to automobiles, the law of theft, either felony or misdemeanor.

Appellant also urges that we erred in holding to be of no injury, a statement volunteered by witness Emilia Rodarte, wife of Garcia, the employe of appellant who fired the fatal shot producing the homicide complained of in this case. Said witness on cross-examination by appellant is shown by bill of exceptions No. 10 to have volunteered the statement, "Since my husband was arrested Mr. Espalin went over to see the watchmen down there, and told them if the sheriffs would come over there and ask them about the orders he had given, to say that he had given such orders as those Mr. Jose Mos-

queda said, instead of going and saying what was not the truth we would do—and he went." It appears from the bill of exceptions that said statement was first made in Spanish to the interpreter, and that before being interpreted the objection was made that said answer was not responsive, and it is stated in said bill that the trial court understood the Spanish language, "sufficiently so that it was evidenced that said testimony was not relevant," but that the court permitted said answer to be interpreted and then sustained appellant's objection, and instructed the jury not to consider same. We understand from the bill of exceptions, approved without qualification, that the court below did understand the statement made in Spanish, and were of opinion that·if this was true, the court below should have sustained appellant's objection on the ground that the answer proposed to be interpreted, was not responsive. Granting which error, we were called upon to say whether same was such as that the matter complained of might have resulted in injury to appellant. There is nothing contained in the bill showing any surrounding facts either before or after the objectionable statement of the witness from which we are enabled to conclude any circumstances for or against same. The most we could make out of said statement, as detailed in the bill, was that after the husband of witness was arrested appellant told the other watchmen in his employe that if inquiries were made of them by the sheriffs they should tell the officers that he had given to them orders such as Jose Mosqueda said, instead of going and saying what was not the truth. We are not apprised by the bill what kind of orders Jose Mosqueda said or anything relative thereto, and if appellant told the other watchmen not to go and say what was not the truth, this would have been commendable and could not have hurt his cause. We are bidden by all the rules to find out from the bill of exceptions presented to us what wrong was done, or injury, if any, inflicted, in the matter complained of. We find ourselves after a careful review of this matter of the same mind as before,—that no injury is shown.

We do not think the statement by the prosecuting attorney in which he referred to the appellant as "this killer" of such inflammatory character as to call for a reversal. It was shown by the evidence that appellant had been indicted at a former time for murder, and it was in testimony by Garcia and his wife that appellant told Garcia to shoot to kill any person who might come over his fence. We cannot see anything so prejudicial in the use of the words indicated as to injure the rights of the accused.

Finding no matter in the motion which leads us to conclude we were in error in our former judgment, the motion for rehearing will be overruled.

*Overruled.*