**Robert D. TUCKER, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43226.**

Court of Criminal Appeals of Texas.

Nov. 25, 1970.

Rehearing Denied Jan. 27, 1971.

Eddington & Friloux by C. Anthony Friloux, Jr., Houston, for appellant.

Carol S. Vance, Dist. Atty., Phyllis Bell and Jimmy R. James, Asst. Dist. Attys., Harris, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is that of being an accomplice to the crime of murder with malice; the punishment, ninety-nine (99) years.

Appellant's first ground of error is that the jury heard not only that one of the principals had been found guilty, but also that death had been the punishment in this principal's case.

It is axiomatic that it is inadmissible to prove that another, jointly or separately indicted for the same offense, has been convicted or acquitted. Bacon v. State, 147 Tex.Cr.R. 605, 183 S.W.2d 177, Barton v. State, 172 Tex.Cr.R. 600, 361 S.W.2d 716.

Another situation is presented when the accused is charged as an accomplice and evidence is offered to show that a principal

is guilty of or has been convicted for the same offense. In the early case of Arnold v. State, decided by the Court of Appeals in 1880, 9 Tex.Ct.App. 435, the court said, at page 438:

"An accomplice under our Code is the same as an accessary before the fact by the common law with very much the same criminal procedure. In order to convict the accomplice, the State must prove the guilt of the principals and that the accomplice advised, commanded, or encouraged the principals to commit the offence. There are two separate and distinct propositions demanding full proof of the State. The principals not having been tried and convicted, so that the record of their conviction could be introduced to establish their guilt, the State was required to prove their guilt in the same manner and to the same certainty as if they themselves had been upon trial; for their guilt must be shown before the accomplice can be legally convicted."

Next in Crook v. State, 27 Tex.App. 198, 11 S.W. 444, where Crook was charged with being an accomplice, the court, at page 445, said:

"In a prosecution against a defendant charged as an accomplice, it is essential for the state to establish the guilt of the principal of the crime charged to have been committed by him. In this case it was essential for the state to establish the guilt of John Middleton, the alleged principal, of the murder of James H. Black. Without proof of Middleton's guilt as principal, the defendant could not be convicted as an accomplice."

In Blumann v. State, 33 Tex.Cr.R. 43, 21 S.W. 1027, the Court stated:

"Nor did the court err in admitting proof of the confession of George B. Jones. The appellant was indicted as an accomplice, and Paul Kirschner and George B. Jones were charged as principals, and it

devolved on the state to prove the guilt of the principals."

In Tuttle v. State, Tex.Cr.App., 49 S.W. 82, the Court said:

"The conviction of appellant was for being an accomplice to his principals, T. J. and N. Singleton, in the perpetration of the alleged swindling. On the trial, the judgment of conviction of T. J. Singleton was introduced in evidence. Appellant objected to the introduction of this evidence, 'because said judgment and sentence was immaterial and inadmissible, and was not competent as proof of guilt against T. J. Singleton, and because same would tend to prejudice the minds of the jury * * *.' "

Later in the opinion, the Court said:

"We believe that said judgment of conviction was competent evidence to be considered by the jury in determining the guilt of the said T. J. Singleton. It was necessary for the state to make out a case against the principal before it could claim a conviction of appellant, and in our opinion said judgment of conviction was admissible in evidence against said Singleton."

In Aven v. State, 77 Tex.Cr.R. 37, 177 S.W. 82, where Aven was tried as an accomplice to arson, the Court said:

"The record shows that said principal had been convicted some time before the trial of appellant, and that in his case he testified, admitting that he had set fire to the house, and showing his guilt as principal."

Later in Espalin v. State, 90 Tex.Cr.R. 625, 237 S.W. 274, 277, the Court, speaking through Judge Lattimore, said:

"The confession of Garcia was admitted in evidence over the objection of appellant. The weight of authority seems in favor of admitting the confession of the principal, where an accomplice is on trial; it being necessary to show the guilt

of the principal, and all evidence being admissible whose legitimate tendency is to show such guilt."

In Waybourn v. State, 113 Tex.Cr.R. 50, 19 S.W.2d 60, Rosa Waybourn was convicted for offering an inducement of $300.00 to one Joe Morales to have her husband killed. She was not present at the time of the killing and did nothing to aid the killer after the murder was committed. There this Court, speaking through Judge Christian, said:

"* * * that Rosa Waybourn * * * prior to the commission of said offense by the said Joe Morales as aforesaid, * * * did unlawfully and willfully promise the said Joe Morales a reward, favor, and inducement, to wit, did promise the said Joe Morales $300 in money, in order to procure the commission of the said offense by the said Joe Morales; the said Rosa Waybourn not being present at the commission of the said offense by the said Joe Morales. * * *

"It was incumbent upon the state, in order to meet the allegations of the indictment, to prove beyond a reasonable doubt that Joe Morales killed deceased in the manner alleged, and that prior to the commission of the said offense appellant promised to pay the said Morales as a reward, favor, and inducement $300 in money in order to procure the commission of said offense."

This question arose again in Peddy v. State, 118 Tex.Cr.R. 603, 40 S.W.2d 153, in which the Court said:

"It was alleged in the indictment that Dewey Parker committed the offense, and that appellant, not being present at the commission of said offense, and prior to its commission, did unlawfully and willfully furnish arms and aid to said Dewey Parker. It was incumbent upon the state, in order to meet the allegations of the indictment, to prove beyond a reasonable doubt that Dewey Parker committed the offense in the manner alleged

in the indictment, and that prior to the commission of said offense, appellant prepared and furnished arms and aid to said Parker for the purpose of assisting in the commission of the offense."

In Aston v. State, 136 Tex.Cr.R. 12, 122 S.W.2d 1073, 1074, with opinion by Judge Christian, the offense was accomplice to assault with intent to murder. There the Court said:

"It appears that the principal had theretofore been convicted of the offense of assault with intent to murder. The charge of the court merely required the jury to find that he had been convicted of such offense. To warrant a conviction of the accomplice the guilt of the principal must be shown. * * * Stated in another way, to authorize a conviction of one as an accomplice 'the state must prove the commission of the offense by the principal to the same certainty as if the principal were on trial, and therefore beyond a reasonable doubt.'"

Later in the opinion, the Court said:

"The fact that the principal had been convicted would not have prevented the appellant from seeking to show that he (the principal) was not guilty."

Finally, in the recent case of Schepps v. State, Tex.Cr.App., 432 S.W.2d 926, 943, Schepps' conviction as an accomplice in the commission of the offense of printing and making a counterfeit cigarette tax stamp was reversed. In an opinion on State's motion for rehearing, we said:

"The State, of course, was required to prove the guilt of the alleged principals in the case at bar in order to convict the appellant as an accomplice, and it was entitled to present all the legitimate evidence it possessed to sustain its burden of proof despite the fact the evidence already presented appeared to have clearly established that element of the offense charged. The State, however, because of its burden of proof, was not

entitled to introduce the extrajudicial confessions of three of the alleged principals in violation of the appellant's federal and state constitutional right of confrontation.

"In the case at bar, despite appellant's objections, the State made no effort to show that the appellant had previously been afforded an adequate opportunity to be confronted by and to cross-examine the three principals whose confessions were used and that they were presently unavailable to the State so as to bring the case within the recognized exception to the constitutional right of confrontation."

◼ Although Schepps, supra, has effectively overruled some of the cases cited above to the extent that they allow introduction of the principal's confession in the trial of the accomplice in violation of the Sixth Amendment right to confrontation, these cases are still authority for the rule that the State must prove beyond a reasonable doubt the guilt of the named principals and that the State may use all competent evidence in doing so.[1]

This, we conclude properly disposes of the first phase of his ground of error number one. As to the second, where the witness testified that the principal had received death as the punishment for his complicity in the offense, we note the following from the record. The State's principal witness was one Delmonte Whitehurst, who had given two statements to the police concerning his complicity in the offense. When called upon by the State's attorney to explain the discrepancies, he stated in effect that at the time the first confession or statement was taken, "My nephew had already give a statement of committing and being the trigger man and he picked the gun and car. I went along with him. When we went to Newton on cattle theft charges, I promised I wouldn't testify in court and wouldn't do anything to see him

get the death penalty, and if he got it he would get it on his own.

"Q. Did he?

"A. Yes, sir."

At this juncture, counsel for the defendant approached the bench and the court instructed the bailiff to retire the jury, and when they returned to the courtroom, the court charged the jury as follows:

"Members of the jury, the Court at this time instructs you you will not consider the last question of State's Counsel or of the witness' answer thereto for any purpose in arriving at your verdict in this case and you will wholly disregard the same."

◼ It is apparent from the above that the accomplice witness injected the statement about the death penalty into the case originally by means of an unresponsive answer. As the Court held that the judgment and sentence in Tuttle, supra, was admissible, the Court was, therefore, also holding that the penalty assessed the principal was admissible and we agree. The cautious trial court, in the case at bar however, attempted to soften the blow that the extreme penalty carried, by instructing the jury not to consider it. Ground of error number one is overruled.

◼ Ground of error number two is that the court erred in failing to grant a motion to take the depositions of certain named witnesses. Appellant's counsel informed the court that he desired to take the depositions in question because the named witnesses were adverse witnesses. The court replied, "Your saying that they are adverse witnesses doesn't make them so. What effort have been made to talk to them to see whether they would talk to you or not?" Certainly the court, under Art. 39.02, Vernon's Ann.C.C.P., has discretion in whether or not he shall permit the taking of depositions. As appellant failed to

---

1. Compare Steele, Criminal Law and Procedure, 24 Sw.L.J. 229, 239 (1970).

present good cause to the court, the court did not abuse its discretion in denying the application.

■ The appellant's third ground of error relates to the asking of questions concerning the existence of a conspiracy between appellant, Whitehurst and others to kill other people and in which they called themselves, "Murder, Incorporated." At the outset we observe that the following transpired and the following objection was made:

"Q. Did you attempt to set up any type of organization in regard to the killing of people?

"A. Yes, sir.

"Q. All right. Who did you set it up with? Who did you talk to in regard to setting this thing up?

"A. Well, four or five of us.

"MR. BOBBITT (Defense Counsel): I object to who he talked to."

We find at other times the following information was secured after an objection had been overruled:

"MR. JAMES (State's Attorney): What did you name this organization, Delmonte?

"WHITEHURST: Murder, Incorporated.

"Q. Now, how many times in all did you see this particular Defendant, Robert D. Tucker, Jr.?

"A. Oh, about five occasions.

"Q. All right. Would you tell this jury the nature of each occasion, what was the purpose of the meeting and what occurred? Let's take the second one since you have already told us about the first one.

"A. The second was for the same purpose, to find somebody to do a job.

"Q. What about the third one?

"A. The third was the same.

"Q. What did you understand him to mean when he said do a job?

"A. To get somebody killed.

"Q. And was the fourth one for the same purpose?

"A. Yes, sir.

"Q. What about the fifth one? Who was present during the fifth one?

"A. Four of us were present.

"Q. Who all were they?

"A. Tucker, Burkenhalter (sic), Roy Brashier, and myself.

"Q. Had anyone other than you and those people been present at the other four meetings that you can recall?

"A. On one occasion."

Once it had been established that the named group had as its purpose the killing of others, we conclude that nothing more was added by giving the name which they assigned to themselves. There is no implication in this record that they were connected with any other group of persons anywhere in the world, such as the Mafia, as appellant contends. Further, we note that in Saddler v. State, 167 Tex.Cr.R. 309, 320 S.W.2d 146, 149:

"The rule is well settled that the acts and declarations of one conspirator during the furtherance of the conspiracy are admissible against the other conspirators. 4 Branch's Ann.P.C. par. 2243, pages 602 and 603; Weston v. State, 164 Tex. Cr.R. 222, 297 S.W.2d 681; Aguero v. State, 164 Tex.Cr.R. 265, 298 S.W.2d 822, and Angle v. State, [165 Tex.Cr.R. 305], 306 S.W.2d 718. This rule applies though the act or declaration occurred out of the presence and hearing of the conspirator on trial. Braley v. State, 156 Tex.Cr.R. 15, 238 S.W.2d 539."

This rule would authorize the above entire testimony.

**636**

■ Appellant's fourth ground of error is that the "prosecutor's deliberate remark that he had a polygraph test indicating the Defendant's guilt, was reversible error." The issue arose as follows: When being questioned by appellant's own counsel, appellant was asked this question, "Robert, when you was (sic) first carried down to the Pasadena Police Department, was (sic) you asked to take a lie detector test?" Answer: "Yes, sir." At this juncture, the prosecutor injected the following: "We will have no objection to this if we are allowed to show any lie detector tests showing his guilt." Objection to this side bar remark was promptly sustained with instructions not to consider the same. The question is: did the appellant's counsel by his own questioning open up the question of a lie detector test. We have concluded that he did and that no reversible error has been reflected by the side bar remark.

■ Appellant's fifth ground of error relates to the asking of some twenty-three alleged leading questions, some twelve remarks of the prosecutor, and some twenty-seven remarks, questions and evidentiary tenders. Assuming, without deciding, that this is a proper presentation in the brief under Art. 40.09, Sec. 9, V.A.C.C.P., we will attempt to discuss first the leading questions. In Hill v. State, 144 Tex.Cr.R. 57, 161 S.W.2d 80, this Court said: "Asking harmless leading question is not commended; yet, we note that the courts seldom reverse a case because questions are leading." This has been followed by this Court in Deams v. State, 159 Tex.Cr.R. 496, 265 S.W.2d 96, Piland v. State, 162 Tex.Cr.R. 362, 285 S.W.2d 230, Bell v. State, 166 Tex. Cr.R. 340, 313 S.W.2d 606, and recently in Ortega v. State, Tex.Cr.App., 462 S.W.2d 296.

As to the remainder of the alleged mistakes or errors, appellant's presentation in his brief by reference to page numbers only makes it extremely difficult for this Court to locate said errors and make proper disposi-tion thereof. It is suggested that the actual questions, testimony and remarks of counsel complained of be quoted in the brief.

In Rae v. State, 423 S.W.2d 587, at 589, this Court said:

"In this ground of error appellant attempts to join in one complaint some nine separate and distinct remarks made by the district attorney, some being made in his closing argument on the issue of guilt or innocence and the others in his argument on the issue of punishment.

"Art. 40.09, Sec. 9, C.C.P., requires that the brief of the defendant 'shall set forth separately each ground of error of which defendant desires to complain on appeal.' See Johnston v. State, Tex.Cr.App., 418 S.W.2d 522, 527 * * *."

■ Appellant's final ground of error is that the court erred in denying the motion for instructed verdict on the grounds that the testimony failed to meet the tests required to "corroborate" the testimony of the accomplice witness Whitehurst. The wording of this contention implies or accepts the fact that Whitehurst was an accomplice witness and did make a complete case against the appellant which clearly established his guilt as an accomplice to the eventual murder. The question then presented is: was Whitehurst corroborated.[2]

The undisputed evidence shows that Dr. Robert Pendleton, who was a physician and part owner of the Red Bluff General Hospital, was murdered on December 9, 1966. Dr. Pendleton died of wounds as a result of gun shots fired from a clump of bushes, adjacent to the hospital in which the murderer was hiding. The testimony shows that the murderer then left the scene and was picked up in a car with similar characteristics to that described by Whitehurst as being his automobile. The evidence shows that Whitehurst's nephew was convicted of the actual murder of Dr. Pendleton and given the death penalty.

2. Art. 38.14 and Art. 38.17, V.A.C.C.P.

A Dr. Burkhalter was shown to be a part owner of the hospital. Appellant was employed at the hospital at times prior to and after the date alleged in this indictment.

The accomplice witness Whitehurst testified that he at some time prior to the homicide operated a junkyard and that appellant approached him at the junkyard, requesting that Whitehurst secure someone to commit a murder. Whitehurst further testified that he, the appellant, Dr. Burkhalter, and a principal named in the indictment were present at a meeting during which Dr. Burkhalter named Dr. Pendleton, the deceased, as a victim of their murder conspiracy and told Whitehurst they must find a man to do the job quickly.

We look first to the testimony of Mrs. Haley in order to determine whether Whitehurst's testimony was sufficiently corroborated. She lived adjacent to the junkyard operated first by Whitehurst and later by Coon. Mrs. Haley saw appellant at the junkyard at least twice in the presence of Whitehurst prior to the homicide. She was certain of the appellant's identity because while she had been a patient in the Red Bluff General Hospital, appellant had administered an injection in her arm and had broken the needle which was itself a traumatic experience.

The witness Coon, who later bought the junkyard from Whitehurst, said that the appellant came to the junkyard, looking for Whitehurst, and told Coon, "He needed to get hold of him [Whitehurst], he had a job he needed done on a professional friend of his and if he did it himself * * * he would be easily detected."

It was shown by the testimony of Dr. Pendleton's brother that a litigation between Dr. Burkhalter and Dr. Pendleton was instituted. The deceased's brother's testimony, as well as that of the appellant established that Dr. Burkhalter left the hospital on October 5th and appellant resigned at the same time because of the dispute between Dr. Pendleton and Dr. Burkhalter.

Appellant testified that he returned to such employment a week after Dr. Burkhalter's return to the hospital on December 20th.

We have concluded from the above quoted testimony and the record as a whole that Whitehurst's testimony was sufficiently corroborated and we find the evidence sufficient to support the conviction.

The judgment is affirmed.