## COMMONWEALTH *vs.* FRANKLIN ESTE.

Worcester.    Sept. 29. — Oct. 21, 1885.    FIELD, C. ALLEN, & GARDNER, JJ., absent.

If the treasurer of a town obtains money from a bank on a promissory note of the town, and uses the money in paying proper town charges, he cannot be convicted of an embezzlement of the money, although he does not account for it to the town, and although such use of the money is contrived as a part of a scheme to defraud the town, to cover up an embezzlement of money already made or one intended to be made.

No exception lies to the refusal to give an instruction which is based on a portion of the evidence only.

INDICTMENT in three counts. The first count charged the defendant, on September 26, 1882, being then the treasurer of the town of Southborough, with the embezzlement of $2000, the property of said town. The second count charged a similar embezzlement, on the day mentioned in the first count, of $485. The third count charged a similar embezzlement, on September 23, 1881, of $1800. Trial in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions, in substance as follows:

The government offered evidence tending to show that, by the records of the town, it appeared that the defendant as treasurer was authorized to borrow money for the town, with the approval of the selectmen, in 1881 and 1882; and that he drew a note as treasurer of the town for $1800, payable, on demand, to the Marlborough Savings Bank, which note was dated September 23, 1881, and was approved by the selectmen.

It further appeared that he gave this note to the Marlborough Savings Bank, and received therefor $1800, in two checks payable to the order of the treasurer of the Marlborough Bank, and indorsed in blank by him, and that the defendant deposited these checks in the Westborough National Bank in his account as treasurer of Southborough, as appeared upon his account at that bank as treasurer of the town of Southborough.

It further appeared, that the defendant kept a book of his accounts as treasurer, in detail, in his own writing, charging himself with money received and crediting himself with expenditures, and making up balances every year, carrying forward the balance as cash on hand; that the receipt of this $1800 was not

entered in his cash received, or elsewhere in his books, except in his account with the bank as treasurer of the town. It appeared by the book of the cashier of the Westborough National Bank, that the defendant, as treasurer of said town, drew out $1500 upon his check, payable to the order of the treasurer of the Commonwealth, on the third day after the $1800 was received, and that at the time the $1800 was received, as appeared on his treasurer's account with the bank, there was but $195 on said account in the bank, and no other money was received by the bank from him prior to the time when the $1500 was drawn out, except the said $1800.

It further appeared, that upon the defendant's account-book, as treasurer of the town, there was an entry of $1500 paid to the treasurer of the Commonwealth, as interest due from the town on a $25,000 note held by the Commonwealth against said town, and that this entry was of the same date as appeared upon the books of the treasurer of the Commonwealth, when $1500 was received from the defendant as treasurer of South-borough.

The government also offered evidence tending to show that, on September 26, 1882, the defendant, as treasurer of the town of Southborough, drew a note for $2000, on demand, approved by the selectmen as the other note was, and presented it to the treasurer of the Commonwealth, who lent him $2000 thereon as follows: giving him a check for $485 payable to the order of the defendant, as treasurer of the town, and applying $1515 on said note for $25,000 held by the Commonwealth against the town of Southborough, that being the amount due as interest at that time. This check for $485 was deposited by the defendant, in his account as treasurer of the town of Southborough, in the Westborough National Bank, on September 27, 1882.

The government put in evidence the treasurer's account-book of the town of Southborough as kept by the defendant, and it nowhere appeared that the defendant, on that book or on any other account or book, had charged himself with this note of $2000 or the proceeds thereof, but it appeared that he had entered the $1515 to his credit as treasurer as paid to the treas-urer of the Commonwealth at the same date as appeared by the indorsement of the same amount as interest then due on the

note of $25,000; nor was there any entry upon the treasurer's book to show that the $485 was received by the defendant as treasurer. It appeared, by the defendant's account-book as treasurer, that on the day he effected this loan and made this payment of $1515 to the treasurer of the Commonwealth, (which was September 26, 1882,) there was a balance in his hands as treasurer of $1680.35 before the credit of $1515 paid the treasurer of the Commonwealth as interest, and that that balance was reduced $1515 by that entry, and was so carried through the books, and was never corrected. It appeared that, at the close of the financial year 1882, namely, on March 1, 1883, the defendant went out of office and settled his account as by his books. The balance then turned over was given on his books as $1412.80. His balance at that time in the bank was $731.44, of which $600 was deposited and drawn out on one check of equal amount with the deposit. It appeared in evidence that the defendant had paid the two notes — the $1800 note held by the Marlborough Savings Bank and the $2000 note held by the treasurer of the Commonwealth — out of his own private funds, after he ceased to be treasurer of the town.

The government offered no further evidence of misappropriation or embezzlement of these several amounts; but, for the purpose of showing the intent of the defendant in these transactions, it was permitted, against the defendant's objection, to introduce evidence tending to show that in 1870 the treasurer of the town of Southborough was authorized to borrow money for the town not exceeding $20,000; that the defendant in 1870 was treasurer of the town of Southborough, and made a note as treasurer of the town for $5000, payable on demand to the Worcester County Free Institute of Industrial Science, and received for the same $5000; that it nowhere appeared upon his books as treasurer of the town that he had charged himself with this money; that he had not informed the town of the existence of this note, and had since 1870 and until 1881 paid the interest on the same out of his private account. To the introduction of this evidence the defendant excepted. The government offered no evidence of other acts of embezzlement between 1870 and 1881.

The defendant requested the judge to instruct the jury as follows: "1. The mere making of false entries, or additions,

or omissions, in his books by the defendant, will not amount to embezzlement, nor warrant a conviction on the indictment. Evidence presented by the books will not in itself amount to embezzlement, or alone warrant a conviction. 2. The evidence of the government under each count must be confined to six months from the time stated in such count; and the government cannot give evidence of an offence charged in the indictment outside of the time or times stated therein. 3. The jury cannot consider any evidence tending to show an embezzlement more than six years prior to the finding of this indictment, even for the purpose of showing an intent. 4. If the jury shall find that the $1800 received by the defendant of the Marlborough Savings Bank was used by the defendant in paying proper town charges, and he intended so to use it, then such use would not be embezzlement, although it was not accounted for in his account with the town."

The judge refused to give said rulings in the terms requested, but instructed the jury in substance as follows: " The mere making of false entries, or additions, or omissions, in his books, would not amount to embezzlement, nor warrant a conviction on the indictment; and on the books alone, no jury ought to convict unless there is other evidence which satisfies the jury, beyond a reasonable doubt, that such false entries, or additions, or omissions, were intentional, and not the result of accident or mistake, and were made with an intent to defraud the town.

" The government is, by statute, limited to acts done within six months after the date stated in each count in the indictment; but the government in this case relied only on acts done by the defendant in reference to the Marlborough Savings Bank, and in reference to the treasurer of the Commonwealth, in order to prove the charge of embezzlement against the defendant, and these acts appear to be within the limitation of the statute; and the defendant must be shown to have fraudulently converted to his own use funds of the town, in connection with one or the other of these transactions, or both; but the jury must find a fraudulent conversion of some specific amount of money of the town under any one count of the indictment, and may convict the defendant, if the evidence justifies it, of the embezzlement of the exact sum named in each count, or of any less sum.

" The books which have been introduced in evidence show certain entries made by the defendant, which are competent as admissions by the defendant relating to the transaction to which they refer, but will not, standing alone, justify the jury in convicting the defendant; but if the defendant failed to charge himself with the $1800 received from the Marlborough Bank, on his treasurer's account, and by so doing made himself better off, and actually defrauded the town out of that amount, the jury may convict, provided he did this with a fraudulent intent to convert. The same is true with regard to the two thousand dollar transaction with the treasurer of the Commonwealth. In regard to this latter transaction, if he had on hand as treasurer of the town $1680, as his account seems to show, and he procured at that time a loan of $2000, with which he never charged himself, and out of such $2000 paid $1515 to the treasurer of the Commonwealth, as interest on a town loan, and entered the payment on the same account which shows $1680 on hand, and did this with the fraudulent intent to convert so much of the funds in the treasury to his own use, and did profit by it, and did intentionally defraud the town, it would then be competent for the jury to convict upon the count which charges the embezzlement of said sum of $2000.

" On the question of the intent with which acts were done by the defendant, and for that purpose only, it is admissible to show prior acts of embezzlement of like character in the exercise of the same duties and office. Such acts are not necessarily incompetent in evidence for such purpose, because beyond the time within which the statute of limitation requires indictments to be found; and if the jury find that the defendant embezzled $5000 of the funds belonging to the town, regarding which evidence has been offered, and kept the fact of the loan concealed from the town and its officers by paying the interest out of his own pocket until after he left the office of treasurer, the jury have a right to consider these facts only as bearing upon the intent with which he did the acts in 1881 and 1882." Other general instructions were given, and not excepted to.

The jury returned a verdict of guilty, on the first and third counts, and of not guilty on the second count. The defendant alleged exceptions.

*J. R. Thayer*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

HOLMES, J.   The evidence of the defendant's embezzlement may be summed up in a few words as follows.   While treasurer of the town of Southborough, he made two notes in authorized form, and applied a large portion of their proceeds to payment of interest due from the town to the State.   In his accounts with the town, he credited himself with the payments so made, but did not charge himself with the notes, or with any part of their proceeds. · The exceptions do not disclose whether there was evidence how his balance stood at the time of the earlier of these transactions; but, at the time of the later, his accounts showed that he was chargeable with $1680.35, which sum was diminished by $1515 on the books by the credit mentioned.   This error was carried through the books until he went out of office, and he then settled his accounts by his books.   He " had paid the two notes " out of his private funds after he ceased to be treasurer; and there was other evidence of a fraudulent intent which we shall mention hereafter.   But there was nothing to show that he made the notes, or received their proceeds, with intent to use them otherwise than he used them in fact; and it will be noticed that, whatever the probabilities, it is possible that he used the whole proceeds in paying proper town charges, as he certainly did the greater part.

We deem it clear that whatever part was so used and intended to be used was not embezzled, even if the use was contrived as part of a scheme to defraud the town.   The fact that the payment was a means of embezzling other money in the future, or covered up an embezzlement of other money in the past, would not make it an embezzlement of the money paid.   Neither would the fact that he represented it to the town (not to the payees) as a payment of other town money ; that is, as a payment from his balance on hand, and not from the notes.   Embezzlement retains so much of the character of larceny that it is essential to the commission of the crime that the owner should be deprived of the property embezzled by an adverse holding or use.   No doubt, questions may arise as to what is a sufficient deprivation or adverse holding, as in *Commonwealth* v. *Mason*, 105 Mass. 163, and cases cited.   See also *Rex* v. *Hall*, Russ. & Ry. 463, 464; *S. C.*

from MS. Bayley J., 2 Russ. Crimes, (5th ed.) 383; *Regina* v. *Richards*, 1 C. & K. 532; *S. C.* from C. J. Tindal's note, 2 Russ. Crimes, (5th ed.) 206. But the principle remains, and, when property is held at every moment as and for the master's property, fraud as to the source from which it comes, or fraudulent intent as to something else, is not a sufficient substitute for the missing element. To this extent we entirely agree with the English cases of *Regina* v. *Poole*, Dearsly & Bell, 345; *Regina* v. *Holloway*, 2 C. & K. 942, & 1 Denison, 370; and *Rex* v. *Webb*, 1 Moody, 431. We think, therefore, that the fourth ruling requested should have been given. Justice to the defendant also required that a similar instruction should have been given as to the other transaction not embraced in that request.

The court seems to have had chiefly in view another aspect of the case. As has been stated, when the defendant credited himself with the payment of $1515, his accounts showed him to be chargeable with $1680.35. His actual bank balance does not appear, nor whether he did have that amount on hand in fact. The fraud, if there was one, may have been intended to cover up an old deficiency. But, treating his account as an admission, the jury might have found that he did then have that amount on hand; and, as his account was never corrected, and his actual bank balance, at the time of final settlement, within six months, was less even than that required by his account, they might have found that, at the date of the entry, or within six months thereafter, he withdrew and embezzled $1515 from the bank account.

It seems to have been, partly at least, with reference to this view that the jury were instructed, that, if the defendant failed to charge himself with the $1800 received from the Marlborough Bank, on his treasurer's account, and by so doing made himself better off, and actually defrauded the town out of that amount, the jury might convict, provided he did this with a fraudulent intent to convert; that the same would be true with regard to the two thousand dollar transaction with the treasurer of the Commonwealth. But this language was misleading, even if it did not embody an error of law in the sense in which it was spoken. The failure to charge himself, apart from the credits for payments which are not mentioned by the court, could only have been a step toward embezzling the proceeds of the notes, a

part of which at least the defendant is shown not to have embezzled; yet the idea is conveyed that an embezzlement to the amount of the notes, and, it would seem, of their proceeds, might be found on this ground. We do not think that the later portion of the charge clearly removed this possible error. On the other hand, the credits for payments, if we are to take the language quoted as tacitly referring to them, while they may have laid a foundation for an embezzlement of funds on hand, if the defendant had them, could have done so only to the extent of such charges, which were less than $1800 and $2000 respectively. Further, it is at least as likely that the way in which the defendant in fact made himself better off, by crediting and by failing to charge himself, whatever his intent, was by concealing an old deficiency, which of course would not be embezzlement, although the instruction would make a contrary impression on the jury's mind. We assume, for the purposes of this decision, that the jury might have found that the defendant embezzled the whole amount laid in the indictment; but, if so, the two parts of each sum must have been got at in different ways; one part, corresponding to the credit, embezzled from the bank account, the other part being the rest of the proceeds of the note not shown to have been paid for the town. We also assume that an embezzlement of any sum from either source, notes or balance on hand, would have warranted a general verdict of guilty. Pub. Sts. c. 203, § 44. *Commonwealth* v. *O'Connell*, 12 Allen, 451. But this very uncertainty of the grounds on which the verdict might go, made it imperative that the jury should be correctly instructed with reference to each alternative. For the reasons given, the exceptions must be sustained.

The first instruction requested was properly refused. The evidence of embezzlement was not confined to that presented by the books, and the court could not be required to select that portion and pass upon what its effect would be in the absence of the rest.

Evidence was admitted of a similar embezzlement ten years before, and only connected with the offence charged by payments of interest out of the defendant's private funds for the purpose of concealment. As these payments might have been made from comparatively innocent motives, the question is raised

whether the evidence is taken out of the ordinary rule, which excludes the proof of other similar but distinct offences.   See *Commonwealth* v. *Tuckerman*, 10 Gray, 173 ; *Commonwealth* v. *Choate*, 105 Mass. 451, 458 ; *Commonwealth* v. *Jackson*, 132 Mass. 16, 18 ; *Commonwealth* v. *Bradford*, 126 Mass. 42, 45 ; *Commonwealth* v. *Shepard*, 1 Allen, 575, 581.   But it is not necessary to decide this question in order to dispose of the case.

*Exceptions sustained.*