[Crim. No. 1180. First Appellate District, Division One.—June 17, 1924.]

THE PEOPLE, Respondent, v. BRUCE FORMAN, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—PAYMENT OF FREIGHT BILLS—PRIOR DEFALCATIONS.—Where the cashier of a freight office of a railroad company, upon receiving from a shipper a check in payment of certain specific freight charges, receipts the original freight bills of said shipper and then deposits the check in the bank to the credit of the railroad company, but, instead of making any entry in the cash-book of the railroad company of the payment of said freight bills of said shipper, wrongfully carries those bills as being unpaid and credits the amount represented by said check to the payment of other freight bills of said shipper, which in

---

1. What constitutes embezzlement, notes, 98 **Am. Dec.** 126; 87 **Am. St. Rep.** 19. See, also, 10 **Cal. Jur.** 238, 247; 9 **R. C. L.** 1264.

fact had been previously paid, but upon which credit of payment had not been given, for the reason that the money which had been received by the railroad company in payment thereof had theretofore been embezzled by him, said cashier is guilty of embezzlement.

[2] ID.—PLEADING—PROOF—VARIANCE.—Where the indictment charges said cashier with the embezzlement of a given sum of money, being the amount of said check, and the evidence shows that he appropriated such sum of money to his own use and purpose, not in the due and lawful execution of his trust, the fact that said check was deposited to the credit of the railroad company (to cover up previous defalcations) did not constitute a fatal variance between the pleading and the proof.

[3] ID. — EVIDENCE — CORPUS DELICTI—CONFESSIONS.—In such prosecution, proof that the railroad company suffered a loss in assets on that day of an amount equal to the amount of said check, and that such loss was the result of the action of the defendant in fraudulently manipulating the accounts of the railroad company, sufficiently established the *corpus delicti* to allow proof of the extrajudicial admissions and confessions of the defendant.

[4] ID.—GENERAL SHORTAGE—INTENT—GUILTY KNOWLEDGE.—In such prosecution, evidence of a general shortage, which necessarily covered other acts of embezzlement, was properly admitted for the purpose of showing fraudulent intent and guilty knowledge and to negative the idea of mistake or inadvertence.

[5] ID.—AMOUNT OF GENERAL SHORTAGE—HEARSAY.—In such prosecution, testimony of an employee of the railroad company concerning the total amount of the general shortage of defendant as ascertained by said witness from books kept by defendant and from books of the shipper not kept by defendant did not constitute hearsay; but, even if such testimony did constitute hearsay, the admission thereof was not harmful to defendant, where the facts covered by such testimony were all established by the extrajudicial confession of defendant.

[6] ID.—ERRONEOUS THEORY—INSTRUCTIONS.—In such prosecution, the defendant having been charged with the embezzlement of a specific

2. See 10 Cal. Jur. 261; 14 Cal. Jur. 95, 100; 9 R. C. L. 1297; 14 R. C. L. 206.

3. Proof of *corpus delicti* in prosecution for embezzlement, notes, 17 Ann. Cas. 630; 68 L. R. A. 33; L. R. A. 1917A, 1289. See, also, 10 Cal. Jur. 261; 9 R. C. L. 1296.

4. Evidence of other crimes in prosecution for embezzlement, notes, 11 Ann. Cas. 816; 62 L. R. A. 193; 43 L. R. A. (N. S.) 774. See, also, 10 Cal. Jur. 271; 9 R. C. L. 1295.

5. See 8 Cal. Jur. 615; 2 R. C. L. 247.

6. See 8 Cal. Jur. 630; 2 R. C. L. 261.

sum in "lawful money of the United States," the trial court did not commit error in refusing to give certain instructions requested by defendant and which were drafted upon the theory that defendant was charged with the embezzlement of a given check or the proceeds of a check.

[7] ID.—PRIOR DEFALCATIONS—BASIS OF CHARGE.—The fact that the proceeds of said check were actually deposited by defendant in the bank to the credit of the railroad company, but was shown as in payment of numerous other prior freight bills, which in fact had been previously paid to defendant, but upon which credit of payment has not been given, did not constitute defendant guilty merely of embezzlement of the amounts of the previously paid freight bills.

---

(1) 20 C. J., p. 427, sec. 16.   (2) 20 C. J., p. 477, sec. 72.   (3) 16 C. J., p. 737, sec. 1514.   (4) 16 C. J., p. 596, sec. 1159, p. 597, sec. 1159.   (5) 16 C. J., p. 624, sec. 1233; 17 C. J., p. 321, sec. 3664. (6) 20 C. J., p. 490, sec. 87.   (7) 20 C. J., p. 427, sec. 16.

APPEAL from a judgment of the Superior Court of Alameda County. Lincoln S. Church, Judge. Affirmed.

The facts are stated in the opinion of the court.

Silverstein, Collier & Silverstein for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondents.

KNIGHT, J.—The defendant, Bruce Forman, appeals from a judgment of conviction of the crime of embezzlement and from the order denying his motion for a new trial.

Defendant was charged by indictment with the embezzlement of the sum of $6,468.54 in lawful money of the United States, belonging to the Western Pacific Railroad Company, a corporation.

Forman for many years was the cashier of the freight office of said railroad company. During the month of December, 1923, while he was away on a vacation, the traveling auditor of the said company discovered a shortage in the cash accounts of the defendant of about $25,000. Thereupon the defendant confessed that he had been wrongfully taking the money from said company for a period extending

7. See 10 Cal. Jur. 250.

over seven years. The amount stated in the indictment, and of which the defendant was convicted of embezzling, constituted a part of that shortage. The method employed by the defendant in misappropriating the particular money in question was as follows: The California Hawaiian Sugar Refining Company were shippers of large quantities of freight over the lines of said railroad company, upon which prepayment of freight charges was required. The accounts of the freight charges were kept in the following manner: A billing clerk employed in the same office with the defendant prepared in quadruplicate freight bills covering the various items of shipment. One copy, the original, was delivered to the defendant as cashier and by him retained in the office until the bill was paid. The second copy was sent to the sugar company to notify them of the amount due. A third copy was sent to the head office of the railroad company, and the fourth copy was retained as an office record. The prepayment of freight charges was supposed to be a cash transaction and therefore, other than the copy of the bill itself, filed alphabetically in the cashier's office under the name of the shipper, no books, except a cash-book were kept in the office showing the freight bills due and unpaid. Referring to the transaction in question said sugar company, after receiving said freight bills and verifying the correctness thereof, forwarded to said railroad company its check for $6,468.54, in payment of the same, together with a memorandum specifying the particular freight bills covered by the amount of the said check. The check and the memorandum accompanying the same were received by L. L. Davis, the agent in charge of said railroad company office, on November 5, 1923, and were by him delivered to the defendant, whose duty it was to receipt the original freight bills and forward them to the sugar company, then to deposit the check in the Central National Bank of Oakland to the credit of said railroad company and enter the bills as paid in the cash-book, which it was his duty to keep. The check was drawn by said sugar company in favor of the railroad company against the account of said sugar company in a bank in which said sugar company had on deposit funds to meet its payment.

It appears that after the check was delivered to the defendant he receipted the original bills and sent them to the

sugar company in the regular way. He also deposited the check in the bank to the credit of said railroad company. He failed, however, to make any entry in the cash-book of the payment of those particular freight bills. Instead of doing so he wrongfully carried those bills as being unpaid and credited the amount represented by said check to the payment of other freight bills of the said sugar company which in fact had been previously paid, but upon which credit payment had not been given, for the reason that the money which had been received by said railroad company in payment thereof had theretofore been embezzled by the defendant. Briefly stated, the defendant used the money represented by the check for $6,468.54 to cover prior defalcations. By the manipulation of the accounts in the manner thus narrated he was able to balance his cash accounts at the close of the day, but nevertheless the books of the company showed a decrease in the company's assets in the amount represented by said check.

[1] The first contention made by appellant upon this appeal is that inasmuch as he deposited the check for $6,468.54 to the credit of the railroad company he committed no crime, even though he did credit the amount of said check to the wrong accounts for the purpose of covering up a shortage caused by previous defalcations. Appellant cites and relies upon the cases of *Commonwealth* v. *Este*, 140 Mass. 279 [2 N. E. 769]; *Dickey* v. *State*, 65 Tex. Cr. 374 [144 S. W. 271]; *Gibson* v. *State*, 13 Ga. App. 459 [79 S. E. 354]. It may be conceded that the cases cited by appellant do hold as he contends. But whatever may be the rule in those jurisdictions it is quite certain that a different rule prevails in this state, for in the case of *People* v. *Rowland*, 12 Cal. App. 6 [106 Pac. 428], it is clearly held that the fraudulent secretion of money by an employee under the circumstances here shown, with intent to appropriate it to his own use, constitutes embezzlement, and that it is immaterial whether he actually drew the cash on the day on which the check was drawn or used the shortage of that day to cover up previous defalcations to the extent of the embezzlement which was committed on that day. That case is similar, both in fact and in law, to the instant case and the rules therein stated are therefore controlling, not only on

this point but they also dispose of most of the other contentions made by appellant on this appeal.

In that case a depositor of a bank delivered to the defendant Rowland, as cashier of said bank, a check drawn upon and payable to said bank for $1,036.15 in payment of a note and interest held by said bank against said depositor. Rowland delivered to said depositor the canceled note, placed the check at the disposal of the bookkeeper for proper cancellation and entry and personally entered the receipt of the interest, $36.15, in the interest account. Rowland failed, however, to make out and file the proper tag showing the payment of said note and likewise omitted to make proper entry thereof in the "loan register" as he should have done. He actually applied the balance of said check, $1,000, to the payment of other accounts in order to cover up previous defalcations. The result of this transaction was that, notwithstanding the cash-books of the bank balanced at the end of the day, the assets of the bank were decreased to the extent of $1,000. It was held embezzlement, the court saying: "By this we mean to be understood as saying that even if he actually took no money from the bank on the day of the Cook transaction, but merely used it to juggle the books as to some other account in order to make it balance or appear straight, he nevertheless thereby misappropriated that particular money and in substantial effect wrongfully converted it to his own use, the fraud of the transaction being indubitably shown, as we have seen, by the fact that he allowed the canceled note of Cook & Passalacqua to remain as though a living asset of the bank. If this is not embezzlement within the meaning of the law (Pen. Code, sec. 504), then we confess that we are at a loss to know what acts will constitute that offense."

Appellant makes the further contentions that there is a fatal variance between the proof and the indictment; that the court erred in admitting in evidence the admissions and confessions of the defendant for the reason, as he contends, that the *corpus delicti* had not been established, and that it also erred in admitting evidence of other acts of embezzlement and of the general shortage.

All of those points are disposed of adversely to appellant's contention by the case of *People* v. *Rowland, supra.*

[2] Referring to the question of variance, appellant has cited several cases to the point that the proof of the embezzlement or larceny of a check or other evidence of money without proof of the conversion of that check into money by the defendant will not support a charge of embezzlement or larceny of money and he argues, therefore, that it cannot be said here that a check actually received and deposited in the proper account and to the credit of the owner constitutes embezzlement of the actual money. In *People* v. *Rowland, supra,* like here, the defendant did not cash the check. The bank received credit for the amount thereof but the sum represented by said check was used by the defendant to cover up his previous defalcations. The defendant there, like here, was charged, not with the embezzlement of the check or the proceeds of the check, but with secreting a specified amount of cash with intent to appropriate the same to his own use. The court pointed out that it was not necessary that the appellant actually appropriate the money alleged to have been embezzled, but that it was sufficient to prove that he fraudulently appropriated that amount of money to his own use and purpose, not in the due and lawful execution of his trust, the court saying: "So as stated, if in the case here the money was either secreted within the meaning of the statute or used to cover up some other shortage, or actually taken from the vaults of the bank and used in some transaction with which the bank had no connection, the crime is, in either event, proved."

[3] There is no merit in the contention that the *corpus delicti* was not sufficiently established to allow proof of the extrajudicial admissions and confessions of the appellant. The fact that the state proved that the railroad company suffered a loss in assets on that day of $6,468.54 and that such loss was the result of the action of the appellant in fraudulently manipulating the accounts of said railroad company was sufficient. (*People* v. *Rowland, supra.*)

[4] The trial court did not commit error in allowing evidence to be received of a general shortage which necessarily covered other acts of embezzlement. This evidence was admitted for the purpose of showing fraudulent intent and guilty knowledge and to negative the idea of mistake or inadvertence. Those precise points were urged in *People* v. *Rowland* and it was held that they were without merit.

It is therefore unnecessary to discuss them further here. The case of *People* v. *Walker,* 142 Cal. 90 [75 Pac. 658], relied upon by appellant in support of this contention, is not applicable here for the reason that there the so-called shortage consisted merely of a general indebtedness due from the defendant to his employer, the inception of which was free from fraud or crime. Here it consisted of wrongful defalcations of the appellant.

[5] The further contention is made by appellant that error was committed by the trial court in receiving, over his objections, testimony of a witness for the state concerning the total amount of the general shortage of the appellant ascertained by said witness from books kept by the appellant and from books of said sugar company not kept by the appellant. It is claimed that such testimony was hearsay. We are of the opinion that it was not hearsay, for the reason that the witness was testifying to matters within his own knowledge acquired in the discharge of his duty. Moreover, the facts covered by this testimony were all established by the extrajudicial confession of the appellant, which was a part of the evidence in the case. Therefore the testimony given by the witness, if it did involve hearsay, was merely cumulative and therefore not harmful.

[6] Appellant also complains of the refusal of the trial court to give certain instructions proposed by the appellant. Those instructions were drafted upon the theory that appellant was charged with the embezzlement of a check or the proceeds of a check. As already pointed out, such was not the fact. He was not so charged. The subject of embezzlement was $6,468.54 in "lawful money of the United States." The instructions proposed were therefore not applicable to the charge and the refusal to give the same was not error.

[7] The concluding point made by appellant is that if the appellant was guilty of any crime at all it was that of the embezzlement of the smaller amounts, which constituted a misdemeanor, part of which were repaid by the appellant out of the amount represented by the check in question, and that since those smaller amounts were appropriated by the appellant more than a year prior to the date of the finding of the indictment, the misdemeanors resulting from said transactions were barred by the statute of limitations.

It is obvious, we think, without discussion, and from what has already been said, that appellant was not charged with the embezzlement of the smaller amounts, but with the misappropriation on November 5, 1923, of the sum of $6,468.54, in lawful money of the United States. Therefore, there is no merit in the point last made.

Finding no error in the record the judgment of conviction and the order appealed from are affirmed.

Tyler, P. J., and St. Sure, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 14, 1924.