[Crim. No. 983. Third Appellate District.—September 29, 1927.]

THE PEOPLE, Respondent, v. W. M. ROBERTS, Appellant.

698

K. D. Robinson and Wallace Shepard for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

BURROUGHS, J., *pro tem.*—The defendant W. M. Roberts was convicted on two charges of embezzlement and was sentenced to imprisonment in the state prison. He appeals from the judgment of conviction and from the order denying his motion for a new trial. The charging part of the first count of the information is as follows:

That the defendant "was the agent and bailee of Pacific Gas and Electric Company, a private corporation organized under the laws of the State of California and doing business in Placer County, California, and by said corporation entrusted with and having in his possession and under his control the sum of $6,498.00, lawful money of the United States, by virtue of his said trust, then and there the property of said Pacific Gas and Electric Company, a corporation, did then and there, to-wit, on the 10th day of August, 1925, at Auburn, in the said County of Placer, State of California, wilfully, unlawfully, feloniously, and fraudulently embezzle and appropriate said money to a use and purpose not in the due and lawful execution of his said trust, as such agent, bailee, and person entrusted with and having said money in his possession and under his control."

The second count is the same in substance as the first, except the crime is alleged to have been committed on October 12, 1925, and the amount alleged to have been embezzled the sum of $1,885.50.

The evidence shows that the Pacific Gas and Electric Company is a California corporation and at all the times herein mentioned was engaged in the business of furnishing water to the public for irrigation. We will hereafter refer to it as the Water Company.

The evidence further shows that at all of the times herein mentioned until January 6, 1926, the defendant was the division accountant for the Water Company and as such officer in charge of its office at Auburn, Placer County, and in full charge of all the accounts for the irrigation water furnished by the Water Company to its consumers, and also the collection of the money therefor. The method of handling these accounts was as follows: Prospective water users were sent blank applications to fill in for, the number of inches of water they desired. On signing and returning these applications to the Water Company they were entered by the latter in a book called "the register of irrigation accounts" and there carried in dollars and cents as due from the consumer to the Water Company. The irrigation season was divided into five months from May to September, both inclusive, and the charge for water to the consumer was nine dollars per inch per month.

The Water Company maintained another department, called the water department, where there was kept a record of all the water actually furnished the consumer, but this department was not under the charge of the defendant. In the due course of business the water department furnished the accounting department each month a record of the number of inches of water actually furnished to each consumer. Among others the Water Company furnished water to the Silva-Bergtholdt Company of Newcastle and to the Penryn Fruit Company of Penryn.

On August 7, 1925, the Silva-Bergtholdt Company issued and mailed to the Water Company in payment of the May and June, 1925, water account its check for $6,498. The check was indorsed with the Water Company's name with a rubber stamp indorsement and cleared through the Capital National Bank of Sacramento on August 12, 1925, and returned in due course to the Silva-Bergtholdt Company. The last-named company was not credited on the books of the Water Company with this amount, until in January, 1926, after the defendant was out of the employ of the Water Company.

On August 11, 1925, there was deposited in the Placer County Bank at Auburn to the credit of the Water Company $6,129.85. There was also issued by the said bank at said time a draft in favor of the Water Company for $368.15. The evidence also shows that the check of the Silva-Bergtholdt Company was given to the bank in payment of these amounts. On the last-named date four credit items appear on the books of the Water Company aggregating said sum of $6,129.85, one of these items being a credit to the Newcastle Fruit Growers' Association in the sum of $3,958 and another item is a credit to the Penryn Fruit Company in the sum of $1,311. Both of these items appear on the books of the Water Company to be for payments for balance due to the Water Company for water furnished during the year 1924. But, as a matter of fact, both companies had paid their 1924 water bill in full long prior to the date on which they were given credit therefor on the books of the Water Company.

In support of the charge alleged in the second count the evidence shows that the Penryn Fruit Company issued and mailed to the Water Company, on October 12, 1925, its check

for $1,885.50, and that it was deposited to the credit of the Water Company on November 2, 1925, in the following form: Cash, $582.49; a draft to the Pacific Fruit Company for $342.16, the latter being given to the Pacific Fruit Company in payment of a debt by the Water Company to it. There was another draft issued at the same time to the Water Company for $960.41. The Penryn Fruit Company had been furnished water to the amount of $1,885.50, but was not given credit on the books of the company therefor until in January, 1926, after the defendant was out of the employ of the Water Company.

The evidence further discloses that it was the duty of the defendant upon the receipt of money to credit it on the books of the Water Company to the party paying and to deposit the amount to the credit of the Water Company in the bank.

Evidence was also received that during the years from 1918 to 1923, inclusive, except during the year 1921, a large number of payments which were made to the Water Company for water furnished by it to its consumers were embezzled by the defendant. These payments aggregate many thousands of dollars more than the items which are specifically charged by the indictment to have been embezzled by the defendant. None of these items, however, was within three years prior to the filing of the indictment.

On January 7, 1926, the defendant stated to H. E. Sheldon, the traveling auditor of the Water Company, that he had confessed to Mr. Cooper that he was short in his accounts and that he had also told Mr. Cooper that Mr. Sheldon knew all about it.

Mr. Cooper, division manager of the Water Company, testified that defendant had told him that there was something wrong and he wanted him to know it. Defendant also stated to E. W. Hodges, general auditor of the Water Company, that there was a shortage and said that he would make restitution to the amount of his financial ability. He later gave Mr. Hodges a list of his financial assets and did make transfers of his property to representatives of the Water Company.

The defendant became a witness in his own behalf and testified in response to a question asked him by his counsel

that he had never taken a dollar from the company since December 17, 1923.

The appellant contends that the indictment is uncertain and his demurrer thereto should have been sustained, the specific objection being that it does not state the conditions of the trust, nor the purpose for which the money came into the defendant's possession, nor to what purpose or use not in the due and lawful execution of his trust he appropriated it.

The indictment is framed under section 504 of the Penal Code, which, so far as is material to this case, reads as follows: ''Every officer, director, trustee, clerk, servant or agent of any association, society or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property which he has in his possession or under his control by virtue of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement.''

Appellant cites in support of this point the case of *People* v. *McMahill,* 4 Cal. App. 225 [87 Pac. 404], but in that case the indictment does not set forth the crime either in the language of the statute or does it allege the facts necessary to show that the offense denounced by the statute had been committed.

In *People* v. *Terrill,* 127 Cal. 99 [59 Pac. 836], it is said: ''It is an elementary principle of criminal law that the indictment or information must state that the crime has been committed either by direct and positive averment in the language of the statute, or its equivalent, or by stating facts which show that such crime has been committed.''

Viewing the indictment in the instant case in the light of the above section and of these decisions, both counts allege that on a specified date the defendant was the agent and bailee of a named private corporation and as such agent and bailee he was entrusted with a specific sum of money, being the property of said corporation, and that on the day specified he feloniously and fraudulently appropriated such money to a use and purpose not in the due and lawful execution of his said trust as such agent. This is sufficient to answer the requirements of the statute; the conditions of

the trust, the purpose for which the money came into defendant's possession and to what use he appropriated it, being matters of proof.

It is also claimed that there is a material variance between the allegations of the indictment and the proof, in that the former alleges the embezzlement of money and the proof shows, if anything, the embezzlement of a check, but this contention has been directly answered in *People* v. *Whalen*, 154 Cal. 472 [98 Pac. 194]. It is there held in a prosecution for obtaining money under false pretenses the fact that the money was obtained by the defendant is sufficiently shown to sustain a conviction, by evidence that the prosecuting witness gave a check therefor to the defendant, and further evidence indicating that such check had been cashed in the usual course of business.

In the case at bar the defendant received the checks and thereafter cashed them in the usual course of business and this is sufficient proof to sustain the allegations of the indictment and does not constitute a variance.

Objection is also made that the court erred in admitting evidence of other and distinct offenses than those charged in the indictment, the contention being that evidence of another crime is not admissible to prove the charge alleged, and for the further reason that all of the said offenses were barred by the statute of limitations. Respondent claims that such evidence was properly admitted to show a general shortage, and because the money which it is alleged was embezzled by the defendant had been used to cover up the previous shortages.

This case is similar in its facts to the cases of *People* v. *Rowland*, 12 Cal. App. 6 [106 Pac. 428], and *People* v. *Forman*, 67 Cal. App. 693 [228 Pac. 378].

Counsel for appellant undertakes to differentiate between these two cases and the one at bar because in the cases cited the indictments allege the secretion of the money embezzled, while in the instant case there is no allegation of secretion. But this contention is without merit and is answered in the Rowland case, *supra*, in this language: "So as stated, if in the case here the money was either secreted within the meaning of the statute or used to cover up other shortages, or actually taken from the vaults of the bank and used in

some transaction with which the bank had no connection, the crime in either event is proved.''

This language is cited with approval in the Forman case, *supra*. Further, in this case there is no attempt to either allege or prove the secretion of the money embezzled. The facts of the Forman case are as follows:

Forman was the cashier of a freight office of the Western Pacific Railroad Company and received from a shipper a check in payment of certain specific freight charges. He receipted the original freight bills of the shipper and then and there deposited the checks in the bank to the credit of the railroad company, but instead of making any entry in the cash-book of the railroad company of the payment of said freight bills of said shipper wrongfully carried those bills as being unpaid and credited the amount represented by the check to the payment of other freight bills of said shipper, which, in fact, had been previously paid, but upon which credit of payment had not been given for the reason that the money which had been received by the railroad company in payment thereof had been previously embezzled by the said defendant. This was held to constitute the crime of embezzlement. The evidence of other embezzlements was competent for the purpose of showing a general shortage where, as in this case, the money wrongfully taken was used to cover up previous shortages. (*People* v. *Rowland, supra; People* v. *Forman, supra; People* v. *Wardwell*, 77 Cal. App. 44 [246 Pac. 97].)

While it is true that no exact balance was struck showing a specific amount of the general shortage, the amount which was actually short was many thousands of dollars more than the amount alleged in the indictment to have been embezzled. Nor does the fact that the previous shortages were barred by the statute of limitations make any difference, as the money used to cover up these previous defalcations was not barred by limitations. In the Forman case a somewhat similar contention was advanced, but the court negatived the claim in the following language: ''The concluding point made by appellant is that if the appellant was guilty of any crime at all, it was that of the embezzlement of the smaller amounts, which constituted a misdemeanor, part of which were repaid by the appellant out of the amount represented by the check in question, and that since those

smaller amounts were appropriated by the appellant more than a year prior to the date of the finding of the indictment, the misdemeanors resulting from said transactions were barred by the statute of limitations. It is obvious, we think without discussion, and from what has already been said, that appellant was not charged with the embezzlement of the smaller amounts, but with the misappropriation on November 5, 1923, of the sum of $6,468.54, in lawful money of the United States, therefore there is no merit in the point last made.''

The last claim urged for a reversal is that the court committed prejudicial error in permitting counsel for the People to cross-examine the defendant as to matters which it is claimed he had not testified to in chief. On his direct examination his counsel asked the defendant the following question: ''Q. Will you state whether or not, at any time in three years, from and after December 17, 1923, you ever took a dollar of the money of the Pacific Gas and Electric Company?'' ''Ans. Not a dollar since December 17, 1923.''

The foregoing was the entire direct examination of the defendant.

The appellant claims that the cross-examination of the defendant as to the acts which had taken place prior to December 17, 1923, was improper and prejudicial, but the defendant having testified that he had taken no money from the company since December 17, 1923, it was proper to allow the district attorney to show what sums of money had been taken prior to that time, as the evidence already before the court showed that the money alleged in the indictment to have been taken was used to cover up these shortages, and that having testified generally upon the subject, it was proper that the cross-examination should be permitted to go into the details as testing the truth of the defendant's statement in chief. Furthermore, a consideration of the questions asked on cross-examination, together with the answer elicited to the questions, could not have been prejudicial to the defendant because those answers carried no meaning. As an example, a question was asked: ''I show you these checks . . . and will ask you if these checks didn't pay in full for the money set out on your books owing to the Pacific Gas and Electric Company

by the Penryn Fruit Company?" And the answer was: "There is no way to determine."

However, if error be conceded and that the scope of the cross-examination was broader than it should have been under a strict interpretation of the law, the evidence, which includes admissions of shortages made by the defendant, satisfies us that said examination did not result in a miscarriage of justice under the provisions of section 4½ of article VI of the constitution, and that the defendant was properly convicted.

No substantial error appearing in the record, the judgment and the order are affirmed.

Finch, P. J., and Plummer, J., concurred.