[Crim. No. 2796. In Bank.—June 28, 1926.]

## THE PEOPLE, Respondent, v. CHARLES F. DILLON, Appellant.

[1] CRIMINAL LAW — PUBLIC MONEYS — DUTIES OF PUBLIC OFFICERS — SECTION 424, PENAL CODE.—Section 424 of the Penal Code has to do solely with the protection and safeguarding of public moneys as defined by section 426 of said code, and the duties of the public officer charged with their custody or control and with no other kind of public property.

[2] ID. — SECTION 17, ARTICLE XI, CONSTITUTION. — Subdivision 2 of section 424 of the Penal Code was re-enacted pursuant to section 17 of article XI of the state constitution, adopted in 1879.

[3] ID.—EMBEZZLEMENT OF PUBLIC MONEYS—PROSECUTION.—If a conviction upon an indictment drawn under section 424 of the Penal Code, with no attempt to conform to the requirements of section 504 of said code, is sustainable under the former section, it would not be rendered void because the defendant might have been prosecuted under said section 504.

[4] ID.—SECTION 504, PENAL CODE—CONSTRUCTION OF.—Section 504 of the Penal Code merely defines embezzlement and fixes the punishment of both public and private corporate officers who may commit the offense as therein described; but it does not assume to regulate the official conduct of public officers in charge of the public revenue, nor does it command or forbid the doing of the many acts mentioned in section 424 of the Penal Code, as safeguards of the public moneys.

[5] ID.—SECTION 424, PENAL CODE—PROSECUTION OF PUBLIC OFFICER.— There is nothing in section 504 of the Penal Code supporting the contention that a public officer who uses public moneys for a

1. See 10 **Cal. Jur.** 242.

"purpose not authorized by law," and which is designated a felony, and not embezzlement, cannot be prosecuted under the provisions of section 424 of the Penal Code.

[6] ID.—QUANTUM AND KIND OF PROOF—POWER OF LEGISLATURE.—The province of regulating the *quantum* and kind of proof that shall be required to establish guilt in any class or grade of crime is a legislative prerogative, pure and simple, and courts may not interfere with this right except in extreme cases.

[7] ID.—USE OF PUBLIC FUNDS—EMBEZZLEMENT—POWER OF LEGISLATURE.—The legislature has the power to provide that embezzlement of public moneys is committed by a public officer when he uses public funds in a manner forbidden by law, even though he may have no fraudulent intent when he does so.

[8] ID.—INTENT TO VIOLATE LAW.—To render a person guilty of crime it is not essential to a conviction that the proof should show such person to have entertained any intent to violate law; it is sufficient that he intentionally committed the forbidden act.

[9] ID.—SECTION 424, PENAL CODE—CONSTRUCTION—INTENT OF LEGISLATURE.—It was not the purpose of the framers of section 424 of the Penal Code to incorporate or adopt, by implication or otherwise, the elements essential to constitute embezzlement as defined by section 504 of said code.

[10] ID.—PUBLIC FUNDS—MALFEASANCE IN USE OF—FRAUDULENT INTENT—INSTRUCTIONS.—In a prosecution in which the defendant, a public officer, was charged with malfeasance in the use of public funds, there was no prejudicial error in the court refusing to give instructions at the request of the defendant based upon the theory that, to justify conviction of the defendant, it was incumbent upon the prosecution to establish the existence in the mind of the defendant of an intent to appropriate said public moneys to a use not authorized by law.

---

(1) 29 Cyc., p. 1450, n. 60.   (2) 29 Cyc., p. 1450, n. 60.   (3) 16 C. J., p. 58, n. 87.   (4) 28 Cyc., p. 480, n. 77 New.   (5) 16 C. J., p. 58, n. 87.   (6) 12 C. J., p. 891, n. 74.   (7) 20 C. J., p. 435, n. 64. (8) 16 C. J., p. 76, n. 1.   (9) 28 Cyc., p. 480, n. 77 New.   (10) 29 Cyc., p. 1450, n. 62.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. Edward I. Butler, Judge Presiding. Affirmed.

---

6.   See 10 Cal. Jur. 676; 6 R. C. L. 462.

7.   See 7 Cal. Jur. 842; 9 R. C. L. 1277.

8.   Intent as element of statutory crime, note, 11 L. R. A. 807. See, also, 7 Cal. Jur. 853; 8 R. C. L. 62.

The facts are stated in the opinion of the court.

Carl E. Lindsay and Lindsay & Conley for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

SEAWELL, J.—Appellant, commissioner of finance of the city of Fresno, this state, and as such officer charged by the laws of the state and by the charter provisions of said city of Fresno with the receipt, safekeeping, transfer, and disbursement of the public funds of said city, was convicted upon eleven counts of an indictment which contained a total of thirty-three counts charging him with malfeasance in the use of public funds while he was occupying said office. The said eleven counts upon which convictions were had, and which constitute the basis of this appeal, are identical except as to dates, persons, and amounts, and in substance allege that said officer, by virtue of his office as commissioner of finance, did, without authority of law, appropriate sums of public moneys to the use of the several persons named therein, contrary to the law prescribing his duties as such public officer.

By virtue of his office as commissioner of finance appellant also performed the duties of city purchasing agent for said city of Fresno, and as such public officer was able to and did obtain substantial discounts on all contracts of purchases of materials or supplies made by him for the use and benefit of said city in the course of his official duties. Appellant, making use of the advantages that the prestige of the office of city purchasing agent afforded, made a number of purchases extending over a period of two years of automobile tires and automobile accessories for the private use and benefit of a number of the city's officers and employees and for two other persons who were not in any way connected with the city government. In one instance a camping outfit was purchased. The persons thus favored were enabled to purchase for their private use, through the agency of said official, supplies and materials at prices apparently available only to the city and which were lower than the prices demanded of persons not privileged to enjoy the favor of said purchasing agent. Usually, it appears, the

sales and deliveries of goods were made directly by the seller to the purchaser. Requisitions were subsequently drawn by appellant as finance commissioner and the amount of the article purchased was afterward paid to the seller by warrants drawn on the city treasury, which were drawn and signed by the appellant in his official capacity. In other words, public funds were used in making payments for goods that were purchased for admittedly private uses. The city was reimbursed through appellant's office either by cash payments or by checks of the purchasers made payable to the city or to the appellant. Payments, so far as shown by the transactions before us in the instant case, in some instances were made forthwith upon delivery of the goods; in others within a period of thirty days or more thereafter, while in one case no reimbursement had been made to the city at the time of the commencement of the trial.

The indictment, which is in the language of the code section defining the offense, was framed upon the authority of section 424, subdivisions 1 and 2, of the Penal Code, which provide as follows:

"Section 424. Embezzlement and falsification of accounts by public officers. Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safe-keeping, transfer, or disbursement of public moneys, who either:

"1. *Without authority of law,* appropriates the same, or any portion thereof, to his own use, or to the *use of another;* or,

"2. Loans the same or any portion thereof; makes any profit out of, or uses the same for *any purpose not authorized by law; . . .*

"Is punishable by imprisonment in the state prison for not less than one nor more than ten years, and is disqualified from holding any office in this state." (Italics supplied.)

The other subdivisions of said section—3, 4, 5, 6, and 7— provide, in the order of enumeration, that each officer who knowingly keeps any false account or makes any false entry or erasures in any account of or relating to the same; or fraudulently alters, falsifies, conceals, destroys, or obliterates any such account, or wilfully refuses or omits to pay over, on demand, any public moneys in his hands upon the presentation of a draft, order or warrant drawn upon such

moneys by competent authority; or wilfully omits to transfer the same, when such transfer is required by law; or wilfully omits or refuses to pay over to any officer or person authorized by law to receive the same any money received by him under any duty imposed by law so to pay over the same, is likewise guilty of a felony and is punishable as prescribed by the general penal clause of said section heretofore set out.

The section as it now exists is the result of an amendment approved March 13, 1905, and it is the latest act prescribing a penalty for the violation of the statutory duties of officers charged with the receipt, safekeeping, transfer, or disbursement of public moneys.

[1] It is clear that the said section has to do solely with the protection and safekeeping of public moneys as defined by section 426 of the Penal Code, and with the duties of the public officer charged with its custody or control and with *no other kind of public property*. The phrase public moneys includes "all bonds and evidence of indebtedness, and all moneys belonging to the state, or any city . . . and all moneys, bonds, and evidences of indebtedness received or held by state, county, district, city, or town officers in their official capacity." (Sec. 426, *supra*.)

[2] Section 17, article XI of the state constitution, adopted in 1879, provides: "The making of profit out of county, city, town, or other public money, or *using the same for any purpose not authorized by law,* by any officer having the possession or control thereof, shall be a felony, and shall be prosecuted and punished as prescribed by law." (Italics supplied.) It will be observed that subdivision 2, section 424 of the Penal Code, responds to the mandate of the constitution in substantially the same language used in the constitution and there can be no doubt but that it was re-enacted in obedience to said constitutional mandate. Neither the same nor substantially the same language used with reference to the single subject of the duties of an officer charged with the receipt, safekeeping, transfer, and disbursement of public moneys appears in any other section of the Penal Code. Section 424 was re-enacted subsequent to the adoption of the constitution of 1879. We make this early observation in refutation of the contention made by appellant to the effect that it was not the legislative intent that section 424 should be applied to the facts of the instant

case in the limited and restricted sense which the letter of its text would seem to compel, but that the case is ruled by sections 503 and 504 of the Penal Code, the first of which defines in general terms embezzlement to be the "fraudulent appropriation of property by a person to whom it has been intrusted" while the latter, section 504, provides that every officer of this state, or of any county, city or other municipal corporation and every officer, director, trustee, clerk, servant, or agent of any association, society, or corporation, public or private, who *fraudulently* appropriates to any use or purpose not in the due and lawful execution of his trust any property which he has in his possession or under his control by virtue of his trust, is guilty of embezzlement.

[3] Conceding that a public officer who embezzles public moneys that have come into his possession by virtue of his office may properly be proceeded against as prescribed by section 504, *supra,* it by no means follows that said section occupies the entire legislative field with respect to the safekeeping of public moneys and the duties of public officers with reference thereto. It is certain that the indictment was drawn under section 424 and no attempt was made to conform with the requirements of section 504. If the conviction is sustainable under the former section it would not be rendered void by reason of the existence of said section 504," . . . "it is no defense under one statute that the defendant might have been prosecuted under another." (Bishop on New Criminal Procedure, sec. 612, subd. 4.)

[4] Section 504 merely defines embezzlement and fixes the punishment of both public and private corporate officers who may commit the offense as therein described. It does not assume to regulate the official conduct of public officers in charge of the public revenue, nor does it command or forbid the doing of the many acts specially mentioned in section 424, *supra,* as safeguards of the public moneys. On the other hand, the subject matter and the language of section 424 clearly indicate that the legislative mind was intently concerned with the single, specific subject of the safekeeping and protection of public moneys and the duties of public officers in charge of the same. [5] No language is to be found in the act which supports the contention that a public officer who uses public moneys for a "purpose not authorized by law" and which is designated a felony, and

not embezzlement, cannot be prosecuted under the provisions of section 424 of the Penal Code, a section enacted in obedience to the express mandate of the constitution, nor is there any room for the claim that the prosecution must fail because, forsooth, there is to be found in another part of the code a section that is less specific and direct in its application to the particular subject of legislation. [6] The province of regulating the *quantum* and kind of proof that shall be required to establish guilt in any class or grade of crime is a legislative prerogative, pure and simple, and courts may not interfere with this right except in extreme cases. [7] No one will deny the power or right of the legislature to provide that embezzlement of public moneys is committed by a public officer when he uses public funds in a manner forbidden by law even though he may have no fraudulent intent when he does so. [8] To render a person guilty of crime it is not essential to a conviction that the proof should show such person to have entertained any intent to violate law. (Pen. Code, sec. 7; *People* v. *O'Brien*, 96 Cal. 171 [31 Pac. 45].) It is sufficient that he intentionally committed the forbidden act. Statutes which come clearly within the exercise of the police power of the state, of which section 424 is a striking example, fully illustrate the rule. (*People* v. *McClennegen*, 195 Cal. 445 [234 Pac. 91], and cited cases.) Section 20 of the Penal Code is too clear to require juridical support. It provides: "In every crime or public offense there must exist a union or joint operation of *act* and *intent,* or criminal negligence." (Italics supplied.) The only construction that may be placed upon the above quoted section is that there must be an intent to do the forbidden thing or commit the interdicted act. It furnishes no basis for the claim that there must exist in the mind of the transgressor a specific purpose or intent to violate law. If it were so, innumerable statutes would be rendered ineffectual. The true rule was announced a number of years ago in *People* v. *O'Brien, supra.* Denis O'Brien was named as grantee in a conveyance of a certain tract of land. After the execution and delivery of the deed to him he erased his name and inserted the name of his wife. In this form the deed was at his request recorded in the office of the county recorder. Thereafter he called upon the county recorder before whom the deed had been acknowledged, in-

formed him that he had erased his own name and substituted the name of his wife as grantee, and requested the recorder to change the record so that it would speak the truth with reference to the transaction. The grantor named in the deed and Mrs. O'Brien having consented to the making of the change, the recorder, as requested by O'Brien changed the record by erasing the name of the wife, Mary O'Brien, and inserting the name of the husband, Denis O'Brien. The defendant, Denis O'Brien, was convicted of the crime of altering the public record. He was prosecuted under the provisions of sections 113 and 114 of the Penal Code, which make it a crime for a public officer, or a person not a public officer to wilfully alter a public record. Fraudulent intent is not specifically made an ingredient of the offense. In that case, as in the instant case, it was urged that it was necessary in making out the offense to prove a fraudulent intent. After holding that ignorance of the law, upon rules that rest upon public necessity, the welfare of society and the safety of the state, does not constitute a legal excuse for the commission of a criminal act, the decision proceeds to discuss fraudulent intent as an element of crime. We quote:

"It is a familiar rule, that to constitute crime there must be a union of act and intent; but our code provides that 'the word "wilfully," when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.' (Pen. Code, sec. 7.) In *Halsted* v. *State,* 41 N. J. L. 552 [32 Am. Rep. 247], this subject was carefully considered and elaborately discussed. After reviewing the authorities, the court reached the conclusion stated in the *syllabus,* viz., that 'when an act, in general terms, is made indictable, a criminal intent need not be shown, unless from the language or effects of the law a purpose to require the existence of such intent can be discovered. The question appertains to the department of statutory construction, and to introduce into the act the requisite of a guilty mind, it must appear that such was the intent of the law-maker.' In *State* v. *McBrayer,* 98 N. C. 623 [2 S. E. 756], the court said: 'It is a mistaken notion that positive, wilful intent to violate the criminal law is an essential ingredient in every criminal offense, and that where

there is an absence of such intent there is no offense; this is especially so as to statutory offenses. When the statute plainly forbids an act to be done, and it is done by some person, the law implies conclusively the guilty intent, although the offender was honestly mistaken as to the meaning of the law he violates. When the language is plain and positive, and the offense is not made to depend upon the positive, wilful intent and purpose, nothing is left to interpretation.' . . . [Citing cases.]

''It has been held that one who marries a second time under an honest but erroneous belief that a decree of divorce which had been granted was valid is afforded no protection by the invalid decree, and that evidence of his good faith will be excluded. (2 Wharton's Crim. Ev., 8th ed., sec. 1695a.) The same principle is applied to many cases, such as selling intoxicating liquors to minors, abducting girls under a certain age, usurping an office under the belief that the usurper was truly elected, illegal voting under the belief that the voter is a qualified elector, publishing a libel in ignorance of its contents, storing gunpowder, and the like. (1 Wharton's Crim. Law, sec. 88; 2 Wharton's Crim. Law, sec. 1584; *Hill* v. *State*, 62 Ala. 168.) . . .

''Sections 7, 112 and 113 of the Penal Code, when read together, clearly establish the proposition that it was not necessary in making out the offense to prove any fraudulent intention on the part of the defendant.''

The changing of a record to make it conform with the fact, or to speak the truth, is surely less reprehensible than is the conduct of a public officer who, in the face of the express provisions of the law, withdraws public funds from their lawful place of deposit and uses them or permits them to be used in the transaction of private business by others and in open violation of law.

[9] That it was not the purpose of the framers of section 424, *supra*, to incorporate or adopt, by implication or otherwise, the elements essential to constitute embezzlement as defined by section 504, is made manifest by the context of section 424. A number of the acts therein described as felonies do not possess a single element of the statutory definition of embezzlement. In fact, considered as unrelated acts, many of them bear not the slightest analogy to acts ordinarily regarded as elements essential to constitute em-

bezzlement. The greater number of the acts therein denounced as felonies are not punishable under the provisions of said section 504, and if appellant's argument is sound it is no offense for a public officer to use public moneys for private purposes *ad libitum* if there exists no fraudulent intent. In the face of the many statutes enacted for protecting and safeguarding the revenue of the state and the declared policy of the whole scheme of legislation such a contention is rather appalling.

To again state the situation more succinctly, section 424 has to do solely with the receipt, safekeeping, transfer, and disbursement of *public moneys* by official custodians. Its care is for but one single subject, to wit, *public moneys*, while section 504 defines embezzlement generally as it relates to private officers as well as to public officers and provides for the punishment of officers who embezzle *any kind of property* which may have come into the possession of said officers whether acting in a public or private capacity. Said sections are arranged and captioned under different titles in the code. Section 424 appears in part 1, title XII, entitled, "Crimes against the Revenue and Property of this State," while section 504 is found in part 1, title XIII, chapter VI, under the title "Embezzlement."

*People* v. *Church*, 3 N. Y. Crim. Rep. 57, was a case that presented a striking resemblance in many important features to the instant case. On principle it cannot be distinguished. It is pertinent both as to offenses made indictable under two separate statutes and also as to the question of fraudulent intent. Church was the custodian of the public funds of the city of Troy. He was convicted on an indictment which charged him with having fraudulently and feloniously appropriated to his own use certain United States Treasury notes, the property of said city of Troy, with the intent to convert them to his own use. Upon disposing of the first point, which is not material to any issue before us, the case tersely disposes of the two main points made by appellant which were referable to statutes of New York very similar in substance to the code sections under consideration:

"With respect to the other points, I think the district attorney might have framed the indictment under either section 470 or section 528. An illegal act frequently offends against the provisions of two or more statutes, and a prosecution

under any one of them is proper. *Commonwealth* v. *Mc-Connell,* 11 Gray (Mass.), 204; *Commonwealth* v. *Trickey,* 13 Allen (Mass.), 559; 1 Bishop on Crim. Law, 7th ed., sec. 778. There is, however, a marked distinction between the two sections. Under section 528, the important element of the offense consists in 'the intent to deprive or defraud the true owner of his property' which is distinctively alleged in the pending indictment. Section 470 does not require any such intent to exist in the mind of the defaulting official when he is appropriating public moneys entrusted to him.

"More must be proven against the defendant to convict him under the pending indictment, than if on trial under section 470."

Admittedly there is a specific class of offenses created by statutes which make the intent to accomplish an evil design or purpose an essential ingredient of the offense; just as essential as the act itself. In that class of crimes the act and specific intent, operating together, constitute the crime, and it is not complete if the intent is absent. An assault with a deadly weapon with intent to commit murder furnishes a typical illustration of this class of crimes. It is not only necessary to prove the assault but also the specific intent with which the assault was made. So with the crime of embezzlement, except in that class of offenses where the statute defines certain interdicted acts and declares them *per se* to constitute embezzlement, as was done by the legislature of 1851 (Hittell's General Laws, 1851–64, p. 698) with reference to this identical subject. In addition to showing the appropriation of another's property the specific intent to appropriate it to one's self with a fraudulent intent is essential to constitute the crime. But the statute in the instant case does not make fraud an ingredient of the offense. There is nothing contained in the body of the act to show that it was the purpose of the legislature to require a criminal intent in the doing of the things therein denounced as a crime. To justify a court in introducing into an act a requisite not found therein it must affirmatively appear that such was the intent of the legislature. (*People* v. *O'Brien, supra.*) No such showing can be made in view of the code section itself and the history of antecedent and present legislation on the subject.

The safekeeping of public moneys has, from the first, been safeguarded and hedged in by legislation most strict and severe in its exactitudes. It has continuously been the policy of the law that the custodians of public moneys or funds should hold and keep them inviolate and use or disburse them only in strict compliance with the law. The public treasury or depository of public funds was created solely as an agency for the receipt and disbursement of public funds with reference to public business and not as a place of exchange for the transaction of private business in the sense that banks and other commercial institutions are created or chartered. A brief *résumé* of the several acts of the legislature defining the duties and prescribing the penalties for violations thereof will suffice to make clear the legislative policy with respect to public moneys. As early as 1851 the legislature provided that if any public officer "charged with the safekeeping, transfer, or disbursement of public moneys, shall convert to his own use in any way whatever, or shall use by way of *investment* in *any kind of property or merchandise,* or shall loan with or without interest any portion of the public moneys, bonds, . . . every such act shall be *deemed* and *adjudged* to be an *embezzlement* of so much of said moneys as shall be thus taken, . . . which is hereby declared to be a felony." (Italics supplied.) (Hittell's General Laws, 1851–64, p. 698.) This was the first act to specifically prohibit the use of public money for private uses. It will be noted that to loan or use the public moneys in violation of the act was made *per se* embezzlement, a felony. Nothing further than the use of the moneys in violation of the act was required to be proved. By an act entitled "An act to provide for the better keeping, protection and disbursement of public moneys," approved March 24, 1863 (Stats. 1863, p. 97), it was provided that it should be the duty of every public officer entrusted with the custody and disbursement of public moneys to keep and disburse in coin so much of said moneys as he shall have received in coin and in paper currency so much thereof as he shall have received in said currency. Such officer was required to keep all moneys in his custody or under his control in *his own possession.* He was forbidden to place the same or any part thereof in the possession of any bank or banker, or any person or persons whatsoever, to be used by them for any purpose whatever

for their own benefit or for the benefit of any other person or persons; said officer was forbidden and prohibited from loaning, borrowing, or in any manner using said public moneys or permitting the use thereof by any person for any purpose whatever, except as provided by the laws of the state. Said officer was prohibited from changing or converting public money, or any part thereof, from coin into currency or from paper currency into any other paper currency or coin.

The only method by which public moneys could be placed without the possession of the custodian was by making a special deposit of the same with a bank.

Upon the adoption of the codes in 1872, the Penal Code was arranged in the following order:

"Title XII.

"Of crimes against the revenue and property of this state."

In the space intervening between the title above set out and the subject matter of the section of the code which contained the number of said section, there was printed in small type and arranged in numerical order the number of the several sections of the code included within the title above designated. To illustrate: "Section 424. Embezzlement and falsification of accounts by public officers." Directly under this section followed section 425, in form as follows: "Section 425. Officers neglecting to pay over public moneys." The other sections contained within the title followed with brief references made to each subsequent section as above indicated. This arrangement, with brief reference to each section, was made for the sake of convenience and was no part of the title or subject matter of the act. In 1880 section 424 was amended and the language of the subhead used by the code compilers as means of identification was adopted as the title to an amendment of the said code section, as follows: "An act to amend section 424 of the Penal Code relating to embezzlements and falsification of accounts by public officers." (Code Amdts. 1880, p. 39.) Said section was amended in 1905 (Stats. 1905, p. 53) for the last time in precisely the same manner. Thus it will be seen that the designation of the offense, to wit, "Embezzlement and falsification of accounts by public officers," which appears as the side heading to section 424 as it is printed in the code at the present time, had its origin with the codifiers

or compilers in 1872, but it was neither a part of the body of the code section nor a part of the original act.

"Embezzlement" was defined by section 504, under title XIII, chapter VI. Following the same method of arrangement as was adopted in the preceding title defining "crimes against the revenue and property of this state," the following sidehead appears: "504. When officer, etc., of any association, guilty of embezzlement." Thus it will be seen that no reference whatever was made in the subheading, which corresponds in arrangement with section 424, to embezzlement of public moneys or revenues by a public officer. But as above pointed out, the subheads or sideheads were the result of compilations. In other words, the subhead to section 424 as inserted in the code of 1872 was carried into the title of the amending acts of 1880 and 1905. This circumstance, however, is not sufficient to change the substance of the statute or overcome the manifest intent of the legislature.

Whether a use of public moneys by a public officer in any manner not authorized by law becomes, in the purview of the statutes on the subject, *ipso facto*, embezzlement, is a question about which we express no opinion as the case is ruled by section 424 as herein construed.

[10] Prejudicial error is assigned upon the ground that the court refused to give certain instructions requested by the defendant. Those instructions were based upon the theory that to justify the conviction of the defendant it was incumbent upon the prosecution to establish the existence in the mind of said defendant of an intent to appropriate said public moneys to a use not authorized by law. In our view of the law such instructions were properly refused.

Appellant has earnestly called to our attention unusual and exceptional instances in which the law, if interpreted as we construe it, would bring about a hard situation. He uses to illustrate his argument the case of a public officer who, in obedience to an invalid statute which he believes to be valid, in good faith, disburses money as therein directed and thereafter said statute is declared to be invalid. In such a case, it is argued, the public officer would be unjustly punished as a felon. Our answer to this argument is that no such case is before us. The officer in the instant case did not act in obedience to a law presumably valid but he acted

in disobedience and contrary to the statute as written. Besides, it is not necessary to here declare what the decision of this court might be in case an officer acted in good faith under color of the authority of law.

It is not for us to consider the wisdom of the statute. It cannot be said to be invalid on the ground that it is unreasonable or harsh. An officer accepts his office with a knowledge of his duties, and in the instant case there was little excuse for the defendant to have been misled into the error he committed. Certainly there was no provision of law or rule of moral right that could have justified him in making the uses of public moneys which the evidence shows he made. The wisdom of the legislature in requiring custodians of public moneys to hold them inviolate is both a protection to the public and to the officer as it tends to remove from him the temptations that beset those who have large sums of money in their possession free from immediate demands.

The judgment and order appealed from are affirmed.

Waste, C. J., Richards, J., Curtis, J., Finlayson, J., *pro tem.,* and Shenk, J., concurred.

Rehearing denied.