[Crim. No. 218. Fourth Appellate District.—September 11, 1931.]

THE PEOPLE, Respondent, v. GEORGE W. MOULTON, Appellant.

Edward J. Kelly for Appellant.

U. S. Webb, Attorney-General, John D. Richer, Deputy Attorney-General, and Thomas Whelan, District Attorney, for Respondent.

ALLISON, J., *pro tem.*—The defendant, the county assessor of the county of San Diego, was convicted on two counts of an indictment charging him with malfeasance in the use of public funds. The first of said counts charges that the said defendant did wilfully, unlawfully and feloniously use for purposes not authorized by law, public moneys in the amount of $21,599.69, which moneys were in his possession in his official capacity as county assessor of said county of San Diego. The second count upon which the defendant was convicted, being designated as count No. 4 in said indictment (counts 2 and 3 of said indictment having been dismissed) charges the defendant with the crime of grand theft of the sum of $2,974.22, which moneys were in his possession in his official capacity as county assessor. Appellant was sentenced to San Quentin for the term prescribed by law. This appeal is from the judgment of conviction and order denying defendant's motion for a new trial.

It appears from the record in this case that said defendant was, on and prior to the twenty-first day of April, 1930, delinquent in his payments to the county treasurer of San Diego County for tax moneys collected by him for taxes due and payable for the year 1929–1930, in the sum of $21,599.69; that there came into his possession as such county assessor, the said sum of $21,599.69 of said tax moneys collected by him between the first day of March, 1930, and the twenty-first day of April, 1930, as taxes for the year 1930–1931, and on or about the said twenty-first day of April, 1930, said defendant represented to the county auditor and county treasurer that said sum of $21,599.69 was the accumulation of tax moneys collected by him on and before the first Monday in March, 1929, for the year 1929–1930, and at said time paid over and delivered said sum of money to the said county treasurer of San Diego County to be

applied by said county treasurer on said delinquent sums from defendant to said treasurer aforesaid. Said county auditor and county treasurer, believing and relying upon said representations so received from said defendant, applied said sum of $21,599.69 to said delinquency. The fourth count of said information, being one of the counts upon which the defendant was convicted, charges the defendant with grand theft in the sum of $2,974.22. The indictment, which is in the language of the code section defining the offense, was framed upon the authority of section 424 (subds. 1 and 2) of the Penal Code, which provides as follows:

"424. Embezzlement and falsification of accounts by public officers. Each officer of this state, or of any county, city, town or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who either:—

"1. Without authority of law, appropriates the same, or any portion thereof, to his own use, or to the use of another; or,

"2. Loans the same or any portion thereof; makes any profit out of, or uses the same for any purpose not authorized by law," etc.

Subdivisions 3, 4, 5, 6 and 7 of said section deal with offenses other than the offense charged in the indictment. Section 424 of the Penal Code deals solely with the protection and safekeeping of public moneys as defined by said section, and with the duties of public officers charged with its custody and control, and with no other kind of public property. (*People* v. *Dillon*, 199 Cal. 1 [248 Pac. 230, 234].)

It is urged by the defendant that the offense does not come within the provisions of subdivision 2 of said section 424 and he argues that his neglect or failure to pay over the moneys as required by said section 424 may constitute a violation of section 425 of the Penal Code, but not a violation of subdivision 2 of section 424. Section 425 of the Penal Code reads as follows:

"425. Officers neglecting to pay over public moneys. Every officer charged with the receipt, safe-keeping, or disbursement of public moneys, who neglects or fails to keep and pay over the same in the manner prescribed by law, is guilty of felony."

In support of his contention he urges that because the money in question was paid to the county treasurer, who was duly authorized to receive the same, that it was used for a purpose authorized by law and not in violation of subdivision 2 of section 424. It is to be borne in mind that the defendant is charged with having collected the tax moneys in question for the fiscal year 1930–1931 and deposited the same in the county treasury under the representation that the same were for taxes collected for the fiscal year 1929–1930. He is not charged with neglecting to pay over the tax money received by him in 1929, but with making the improper and unlawful use of the 1930–1931 tax money to cover his shortage of 1929 and 1930.

It is true that the embezzling of the tax moneys of 1929–1930 was a violation of section 425 of the Penal Code and a criminal prosecution may have been had thereon. However, it cannot be contended that said section occupies the entire legislative field with respect to safekeeping of public moneys and the duties of the public officers with reference thereto. If this conviction is sustainable under section 424 it will not be rendered void by reason of the existence of section 425 of the Penal Code. (See *People* v. *Dillon, supra.*) It is no defense under one statute that the defendant might have been prosecuted under another. (Bishop on New Criminal Procedure, sec. 612, subd. 4.)

██ The defendant insists that there is no evidence that an assessment of personal property was ever made; therefore no taxes became due, and in some manner this absence of proof of an assessment relieves the defendant of the charge against him. We are unable to follow the defendant to this conclusion. The moneys collected by the defendant as county assessor were taxes on personal property not secured by a lien on real estate. These collections were in fact made by him for the fiscal year 1930–1931 after March 1, 1930. Section 3756 of the Political Code provides in part that the taxes on all personal property, unsecured by real estate, shall be due and payable immediately after the assessment of said personal property is made, but in any event the personal property tax on unsecured personal property is delinquent on the first Monday in December of each year at 6 o'clock P. M.

The defendant as county assessor is charged with the offense of using public moneys for purposes not authorized by law. The money was paid to him as such county assessor and was in his charge and keeping. Whether an assessment was actually made or not, is of little consequence so far as this charge is concerned. He accepted the money as a public official upon whom the law imposed the duty, among other things, of collecting and properly disbursing the moneys so collected. The question of the legality of the tax is in nowise involved in the matters before us.

It is also contended that the evidence is insufficient to sustain the charge of grand theft as contained in count 4 of the indictment; that the evidence does not disclose a violation of subdivision 2, section 424, of the Penal Code. It appears that after the auditor checked all of the records of the 1929–1930 personal property tax assessment-rolls and the records of receipts issued against the amounts of money deposited with the treasurer by the defendant, there was on May 1, 1930, a shortage of $2,974.22, and that thereafter on the fifth day of May, 1930, the defendant, as such assessor, deposited the said sum of $2,974.22 with the treasurer to be credited on the 1929–1930 account and that this amount was in fact collected on the 1930–1931 personal property taxes. It seems that these facts were amply sustained by the records of the defendant's office.

It is contended by the defendant that the deposit of funds in the county treasury could not in any sense be deemed a misappropriation unless such deposit was a part of another general embezzlement. A similar question was presented in the case of *People* v. *Forman*, 67 Cal. App. 693, 701 [228 Pac. 378, 380], in which the court, in disposing of the point, said: "Appellant was not charged with the embezzlement of the smaller amounts, but with the misappropriation on November 5, 1923, of the sum of $6,468.54 in lawful money of the United States. Therefore there is no merit to the point last made."

A crime of embezzlement is made out when it is shown that a public official fraudulently appropriates to any use or purpose not in the due course and lawful exercise of his trust, any property which he has in his possession or under his control by virtue of his trust, and it need not be shown that a prior embezzlement existed if the public

official used the funds entrusted to him in any way other than as authorized. In *People* v. *Rowland,* 12 Cal. App. 6, 17 [106 Pac. 428, 432], the court said:

"So, as stated, if, in the case here, the money was either secreted within the meaning of the statute, or used to cover up some other shortage or actually taken from the vaults of the bank and used in some transaction with which the bank had no connection, the crime is, in either event, proved."

In the case of *People* v. *Dillon, supra,* the court said:

"The safekeeping of public moneys has, from the first, been safeguarded and hedged in by legislation most strict and severe in its exactitudes. It has continuously been the policy of the law that the custodians of public moneys or funds should hold and keep them inviolate and use or disburse them only in strict compliance with the law. The public treasury or depository of public funds was created solely as an agency for the receipt and disbursement of public funds with reference to public business and not as a place of exchange for the transaction of private business in the sense that banks and other commercial institutions are created or chartered. . . .

"It is not for us to consider the wisdom of the statute. It cannot be said to be invalid on the ground that it is unreasonable or harsh. An officer accepts his office with a knowledge of his duties, and in the instant case there was little excuse for the defendant to have been misled into the error he committed. Certainly there was no provision of law or rule of moral right that could have justified him in making the uses of public moneys which the evidence shows he made. The wisdom of the legislature in requiring custodians of public moneys to hold them inviolate is both a protection to the public and to the officer as it tends to remove from him the temptations that beset those who have large sums of money in their possession free from immediate demands."

Other errors are assigned, but in our opinion they are without merit and considering the record as a whole we believe that there is no prejudicial error appearing therein warranting a judgment of reversal.

The judgment and order are affirmed.

Jennings, Acting P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 24, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 8, 1931.