THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LUIS FELIPE PADILLA, Defendant and Appellant.

No. 7622.   Argued June 6, 1939.—Decided February 15, 1940.

*E. Pérez Casalduc* for appellant.   *R. A. Gómez, Prosecuting Attorney*, and *Luis Janer, Assistant Attorney General*, for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Luis Felipe Padilla was convicted of a violation of Section 328 of the Penal Code and sentenced to two years in the penitentiary. His contention is that a violation of Sec-

tion 328 of the Penal Code is a misdemeanor punishable only by a maximum fine of $3,000 or imprisonment in jail not to exceed three years. The gist of the argument is this:

Section 204 of the Penal Code, as amended in 1933 (Session Laws 264) makes involuntary manslaughter a misdemeanor punishable "by confinement in jail for a maximum term of three (3) years, or by a maximum fine of three thousand (3,000) dollars, or by both penalties at the same time, in the discretion of the court." The effect of this amendment was to amend also section 328 of the Penal Code as far as the penalty for a violation thereof is concerned. The offense defined in that part of section 328 which speaks of the "death of a human being", brought about in the manner therein described, is a form of involuntary manslaughter as defined by section 203 of the Penal Code. *People* v. *Lebrón*, 23 P.R.R. 611. To hold that the whole of section 328 of the Penal Code is still in force, notwith-standing the 1933 amendment of section 204 of the Penal Code, would lead to the absurd result that a defendant, convicted of a violation of section 328, consisting in the reckless driving of an automobile on a public road, resulting in a collision and the death of a human being, may be sentenced to a term in the penitentiary; while another defendant—convicted of involuntary manslaughter as the result of fast driving on a crowded city street, who had killed without warn-ing a human being standing on the sidewalk in a presumably safe place—may receive a jail sentence or be sentenced only to the pay-ment of a fine. When a law is susceptible of a reasonable construc-tion, it is the duty of the courts so to construe it and thereby avoid the absurd results which would follow in the case of the law now under consideration. 59 C. J. 968, section 574. If the offense defined by section 328 can be regarded as practically included in that part of section 203 which defines involuntary manslaughter—the penalty for which is prescribed by section 204—the amendment of section 204 reducing its grade and the penalty repeals that part of section 328 which specifies a higher grade and a heavier penalty.

Appellant relies on the following cases: *United States* v. *Yuginovich,* 256 U.S. 450; *United States* v. *One Bay State Roadster,* 2 Fed. (2d) 616; *United States* v. *Stafoff,* 268 Fed. 417; *United States* v. *Stafoff,* 260 U.S. 477; *State* v. *McClel-lan (La.),* 98 So. 748; *Espalin* v. *State (Tex.)* 237 S.W. 274;

*United States* v. *One Chevrolet Coupe,* 9 Fed. (2d) 85; *Newbauer* v. *State (Ind.),* 161 N.E. 826, and *State* v. *Tate (La.),* 171 So. 108.

The *Fiscal* of this court cites: *People* v. *Canals,* 48 P.R.R. 775; *People* v. *Morales,* 43 P.R.R. 973; *People* v. *Román,* 41 P.R.R. 761; *People* v. *Jiménez,* 31 P.R.R. 334; *People* v. *Collins,* 233 Pac. 107; 5 Am. Jur. 914, Section 762; Id. 925, Section 788; 8 R.C.L. 148; 2 R.C.L. Supp. 562, Section 133; *People* v. *Collado,* 30 P.R.R. 178; *State* v. *Schaeffer,* 117 N.E. 220, and *People* v. *Buscaglia,* 54 P.R.R. 894.

██ Sections 192, 193 and 369 of the California Penal Code—both at the time of their original enactment in February 14, 1872, and at the time of their adoption in 1902 by our Insular Legislature as sections 203, 204 and 328 of our Penal Code—were as follows:

"Section 192.—Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

"1. Voluntary—upon a sudden quarrel or heat of passion.

"2. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.

"Section 193.—Manslaughter is punishable by imprisonment in the state prison not exceeding ten years.

"Section 369.—Every conductor, engineer, brakeman, switchman or other person having charge, wholly or in part, of any railroad, car, locomotive, or train, who wilfully or negligently suffers or causes the same to collide with another car, locomotive, or train, or with any other object or thing whereby the death of a human being is produced is punishable by imprisonment in the state prison for not less than one nor more than ten years."

In 1908 automobiles and steamboats were added to the "railroad car, locomotive, or train" specified in section 328 as adopted by the Insular Legislature in 1902. Train dispatchers, telegraph operators, station agents and other persons "wholly or in part charged with the duty of dispatching or directing the movements of any such car, locomotive,

automobile, train dispatcher or steamboat'' were also added to the list of persons previously enumerated. The maximum penalty of ten years in the penitentiary was retained. The minimum, in the event of a penitentiary sentence, was reduced from one year to six months. The section, as amended, also provided in the alternative for a maximum jail sentence of two years. See Compilation of the Revised Statutes and Code of Puerto Rico of 1911, section 5776.

In 1916 (see Penal Code 1937 ed.) the maximum in case of a penitentiary sentence was reduced from ten to five years. The minimum penitentiary sentence and the alternative jail sentence—in case of death resulting from the collision—were deleted and the following provision was added:

''If as a consequence of the collision, injury is suffered by any person, such conductor, engineer, brakeman, switchman or other person shall be punishable by imprisonment in jail for a maximum term of two years, or by a maximum fine of one thousand dollars, or by both penalties in the discretion of the court.''

Section 204 remained unchanged until 1933. It was then amended (see Penal Code 1937 ed.) and now reads as follows:

''Voluntary manslaughter shall be punished by penitentiary imprisonment for a maximum term of ten (10) years. Involuntary homicide shall be punished by confinement in jail for a maximum term of three (3) years, or by a maximum fine of three thousand (3,000) dollars, or by both penalties at the same time, in the discretion of the court. It shall be considered as a misdemeanor for all legal purposes, and the district courts of Puerto Rico shall have exclusive original jurisdiction in cases of involuntary homicide. The accused shall have the right to request that he be tried either with or without a jury.''

In *United States* v. *Yuginovich, supra,* the Supreme Court said: (Italics ours.)

''It is, of course, settled that repeals by implication are not favored. It is equally well settled that a later statute repeals former

ones *when clearly inconsistent with the earlier enactments. United States* v. *Tynen,* 11 Wal. 88. In construing penal statutes, it is the rule that later enactments repeal *former ones practically covering the same acts but fixing a lesser penalty.* The concluding phrase of section 35 by itself considered is strongly indicative of an intention to retain the old laws. But this section must be interpreted *in view of the constitutional provision contained in the Eighteenth Amendment and in view of the provisions of the Volstead Act intended to make that Amendment effective.*

"Having in mind these principles and considering now the first count of the indictment charging an attempt to defraud and actually defrauding the Government of the revenue tax, we do not believe that the general language used at the close of section 35 evidences the intention of Congress *to inflict for such an offense the punishment provided in section 3257 with the resulting forfeiture, fine, and imprisonment, and at the same time to authorize prosecution and punishment under section 35 enacting lesser and special penalties for failing to pay such taxes by imposing a tax in double the amount provided by law, with an additional penalty of $500 on retailers and $1,000 on manufacturers.* Moreover, the concluding words of the first paragraph of section 35, as to all the offenses charged, must be read in the light of established legal principles governing interpretation of statutes, and *in view of the provisions of the Volstead Act itself making it unlawful to possess intoxicating liquor for beverage purposes, or property designed for the manufacture of such liquor, and providing for their destruction.* We agree with the court below that while Congress manifested an intention to tax liquors illegally as well as those legally produced, which was within its constitutional power, *it did not intend to preserve the old penalties prescribed in section 3257 in addition to the specific provision for punishment made in the Volstead Act.*

"We have *less difficulty* with the other sections of the prior revenue legislation under which the charges, already set forth, are made. We think it was not intended to keep on foot the requirement as to displaying the words *'Registered Distillery'* in a place intended for the production of liquor for beverage purposes *which could no longer be lawfully conducted;* nor to require a bond for the control of such production; nor to *penalize the making of mash* in a distillery which could not be authorized by law."

We need not—by similar excerpts from the opinions in the other federal cases, *supra*—emphasize the difference between the facts in those cases and the facts in the instant case.

In *Espalin* v. *State,* 237 S.W. 274, the Texas Court of Criminal Appeals held as stated in the syllabus that:

"When the Legislature selects certain acts, penal under an existing statute, and by specific designation makes such acts punishable by a different penalty from that theretofore applicable and essentially changes the ingredients of the new offense, such specified acts are removed from the former classification and must thereafter be in the class placed by the new act."

In *State* v. *McClellan,* 98 So. 748, 749, it was said that: "Where two criminal statutes are repugnant as to the punishment that may be inflicted, they cannot stand together. *State* v. *Hickman,* 127 La. 442, 53 So. 680." Similar expressions may be found in other cases, one or two of which are cited by appellant. We have examined only a few of the cases not so cited. As a starting point for further inquiry along this line, see 59 C.J. 938, section 551.

It is familiar law that a single act may be a violation of different statutes: *Gavieres* v. *United States,* 220 U.S. 338; *Morey* v. *Commonwealth,* 108 Mass. 433; 8 R.C.L. 149, section 135; *Pivak* v. *State,* 202 Ind. 417, 175 N.E. 278, 74 A.L.R. 406.

It is equally elementary that in such cases the people may elect to prosecute under either statute.

*People* v. *Jiménez,* 31 P.R.R. 334; *In re Converse,* 137 U.S. 624; *People* v. *Dillon,* 199 Cal. 1, 248 Pac. 230; *People* v. *Moulton,* 116 Cal. App. 552, 2 Pac. (2d) 1009; *People* v. *Crane,* 356 Ill. 276, 190 N.E. 355; *People* v. *Menagas,* 367 Ill. 330; 11 N.E. (2d) 403; *Bonahoon* v. *State,* 178 N.E. 570, 79 A.L.R. 453; 1 Bishop's New Criminal Law, 8th ed., section 791; 2 Bishop's New Criminal Procedure, 480, section 612, Subdivision 4.

Section 44 of our Penal Code provides that:

"An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

Title VIII of Part I of the California Penal Code treats of Crimes Against the Person. Chapter I of that title deals with homicide. It defines: murder; malice, express and implied; degrees of murder; manslaughter, voluntary and involuntary; excusable homicide; justifiable homicide by public officers; and justifiable homicide by other persons. It specifies the punishment for murder and the punishment for manslaughter and contains various other provisions. Sections 192 and 193 are a part of this chapter.

Section 369 of the California Code is a part of Title X which treats of crimes against the public health and safety. This title at the time of its original enactment included: death from explosions; death from collision on railroads; public nuisance; deposit of dead animals in streets, rivers, etc.; keeping gun powder, etc., unlawfully; violation of quarantine laws by masters of vessels; violation of health laws; neglect of duties under health laws; unlicensed piloting; the labeling of drugs by apothecaries; false weights; adulteration of foods and drinks; sale of adulterated or tainted foods, or drinks, or drugs; setting out fires; obstruction of attempts to extinguish fires; maintenance of bridges or ferries without authority; violation of undertaking to keep ferry; fast riding or driving on toll bridges; crossing bridges, etc., without paying toll; failure to ring locomotive bell at highway crossing; intoxication of engineers, conductors, or drivers of locomotives or cars; placing of passenger cars in front of freight cars; violation of duties by employees of railroad companies; exposure of persons infected with contagious disease in public places; frauds practiced to

affect the market price; racing on highways; sale of liquors to drunkards or Indians; selling of firearms and ammunition to Indians; and death from mischievous animals.

The obvious purpose of the California Legislature in the enactment of section 369 was to protect the public, especially the travelling public and more particularly perhaps train passengers, from the disastrous though indirect result of criminal negligence on the part of those having charge of such dangerous instrumentalities as railroads, cars, locomotives and trains. Death as the direct result of such negligence —in the absence of a collision such as those described—would be ordinarily the death of a single individual. On the other hand, the collision between a locomotive and a farm wagon or a stage coach at a railroad crossing might cause the death of a half a dozen or more occupants of the vehicle. In a collision between a messenger train and a freight train the number of dead might be fifty or more. In the case of a collision between passenger trains a still greater number of passengers might lose their lives. Such considerations without more would have justified the minimum penalty of one year in the state penitentiary as fixed by the California Legislature.

We find little intrinsic evidence of an intention in 1872 merely to prescribe a different penalty for a certain kind of involuntary manslaughter already covered by the definition contained in section 192. If such had been the intention of the California Legislature, the simplest and easiest way to accomplish that result, would have been to make a slight change in the wording of section 193. Section 369 was equally unnecessary as a means of removing any doubt as to whether the killing of a human being in the manner indicated by that section would be manslaughter as defined by section 192. Any such doubt could have been much more readily dissipated by a slight change in section 192. If the intention of the Legislature was to define and punish a kind of involuntary manslaughter, not already included in section

192, the logical way would have been to make the necessary changes in section 192 and 193. None of these three hypotheses seems to furnish a satisfactory explanation for the enactment of section 369. Section 369 does not say that any person doing anyone of the things for which he may be punished as therein provided is guilty of manslaughter or shall be deemed guilty or manslaughter as defined by section 192 or otherwise. The omission is significant.

If the California Legislature did not intend merely to provide a different punishment for manslaughter, or else to define and punish a new kind of manslaughter, the alternative conclusion is—or would be were it necessary to determine this question—that it intended to define and punish, and did define and prescribe the penalty for, a distinct and separate offense. In the view we take of the case, however, —and especially in view of section 654 of the California Code, the prototype of our section 44, *supra*—we need not dwell upon this aspect of the matter.

For the purposes of this opinion we may put aside the question as to whether the California Legislature in section 369 of the California Code. created a distinct and separate offense. The fact remains that in subdivision 2 of section 192 the Legislature was defining involuntary manslaughter in broad and general terms. In section 193 it was providing a penalty for generic manslaughter. Most of the acts that can be successfully prosecuted as involuntary manslaughter under subdivision 2 of section 192, and a vast majority of the acts which could be prosecuted and punished as manslaughter under sections 192 and 193 could not be prosecuted or punished as violations of section 369. On the other hand, —assuming for the sake of argument that the Legislature in section 369 was dealing only with a sort of involuntary manslaughter—its mind was fixed on that particular sort. It had singled out and was giving careful consideration to a specified class of offenders whose criminal negligence in the handling of specified instrumentalities might produce speci-

fied results, which in turn might cause the death of a human being. The offense defined in section 369—at least when prosecuted under that section—was to be punished as a violation thereof by a penalty more severe than that provided by section 193 for manslaughter, *qua* manslaughter. There was no basic repugnancy between section 369 and sections 192 and 193 of the California Code. They have stood together for sixty-eight years without any question or suggestion of conflict or inconsistency.

Our Insular Legislature in its adoption of section 369 of the California Code as section 328 of our own, and in its amendments of that section in 1908 and in 1916 was giving its special attention to the same specified matters which had occupied the special attention of the California Legislature in 1872. The Insular Legislature, when it amended section 204 of our Penal Code in 1933, was dealing in general terms and in a general way with a general subject, just as it had done in 1902 when it first prescribed a penalty for manslaughter as such. Neither in 1902 nor in 1933 was its mind centered upon the matters specified in section 328 to which especial attention was given in 1902, in 1908 and in 1916. We find no conflict between section 328 as amended in 1916 and section 204 as amended in 1933. Hence, there was no repeal by implication.

A reading of the opinion in an Idaho case, *In re Mallon*, 102 Pac. 374, upon which appellant also relies, will suffice to distinguish that case.

The judgment appealed from must be affirmed.